## Moore's Estate.

*Trust and trustees—Spendthrift trust—Wills—Failure of charitable bequest.*

Where testator creates spendthrift trusts for his sons for life with remainder to the survivor and survivors for life, and then to a charity, and the charitable bequest fails by reason of the death of the testator within a calendar month after the execution of his will, the life estates in trust given to the sons are not merged in the fee in the remainder or reversion which they take under the intestate laws by reason of the failure of the charitable bequest.

Argued Jan. 17, 1901. Appeals, Nos. 321 and 325, Jan. T., 1900, by Albert H. Moore, from decree of O. C. Phila. Co., July Term, 1898, No. 56, dismissing exceptions to adjudication in the estate of Andrew M. Moore, deceased. Before McCollum, C. J., Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Exceptions to adjudication. Before Hanna, P. J.

From the record it appeared that Andrew M. Moore died January 26, 1898, leaving a will dated January 21, 1898, which was duly admitted to probate.

By the will, after bequeathing certain legacies, he created a spendthrift fund for each of his three sons for life, remainder over in each case to the sons or son who might survive the cestui que trust, and remainder, after the death of the last of the three sons, to his executors, the Fidelity Insurance Trust and Safe Deposit Company, Joseph F. Sinnott and Walton Pennewill, Esq., in trust, " to found and maintain such charitable and educational institution or institutions, in my name, as they, in their discretion, may deem wise, proper and expedient."

Before the auditing judge it was claimed that as testator had died within one calendar month from the date of his deed, and that as the charitable bequest had thereby failed, the trust estates for the sons had merged in the remainders vested in them under the intestate laws, and that the sons were entitled to their shares free from the trust. The auditing judge held that the spendthrift trusts were not affected by the failure of the char-

itable bequest. Exceptions to the adjudication were dismissed in an opinion by PENROSE, J., which was in part as follows:

Nor is it less clear, notwithstanding the very able and learned arguments of counsel for the exceptants, that the failure of the charitable provisions of the will, intended to take effect at the death of the survivor of the testator's sons, by reason of his death within a calendar month after its execution, did not affect the trusts for the sons, even though, by reason of such failure, the sons themselves became entitled at the expiration of the trusts to the principal of the estate. Whatever may be the law on this subject in other States of the Union or in England, it is too well settled to be an open question in Pennsylvania, that a trust to protect from creditors of a beneficiary, or from his own improvidence, annexed to an estate for life or any estate less than one of inheritance, is not only valid, but, as said in Norris v. Johnson, 5 Barr, 289, to be regarded with favor, because prompted by "the kindliest feelings of nature, by enabling a benefactor to provide for an unfortunate and improvident person, by means which are his own, and which he ought to be permitted to apply as he pleased," the governing maxim being cujus est dare ejus est disponere: Ashhurst v. Given, 5 W. & S. 323. The right of alienation, whether by voluntary act or by adverse procceding, is an inseparable incident of ownership in fee, and in consequence, where the beneficiary is entitled to the absolute interest, such a trust cannot be created (Keyser's Appeal, 7 P. F. Smith, 236); but it is not an inseparable incident of a life estate (4 Kent, 131), and hence the manifest distinction. It is said, however, that the life estates given to the sons by the will were merged in the fee or absolute interests in the remainder or reversion which they took under the intestate laws by reason of the failure of the gift to charities, and consequently the case falls within the doctrine of Keyser's Appeal, thus entitling the sons to the estate discharged of the trust. But merger can only take place where the interests meeting in the same person are of the same character, either both legal or both equitable; obviously it cannot take place where the life estate is under a trust which the law recognizes as valid, and the ownership of the remainder is legal.

It is a principle so familiar as scarcely to require reference to authority, that where two estates meet, merger will not be

permitted if the purposes of the creation of one of them require that they should remain distinct. See Dougherty v. Jack, 5 Watts, 456, and Forbes v. Moffatt, 18 Vesey, 394. An equitable life estate will not coalesce with a legal remainder to the heirs of the first taker and thus cause a trust to protect from creditors to fail (Rife v. Geyer, 9 P. F. Smith, 395,) any more than it will for the purpose of giving to the equitable tenant for life the power to dispose of the estate : Eshbach's Est., 197 Pa. 153. A remainder in fee in the cestui que trust for life differs in no respect from a remainder to his heirs. When the purposes of a valid trust require the legal estate to remain in the trustee, no act of the cestui que trust, or no operation of law can take it from him. It may be remarked also, that merger could not, under any circumstances, take place here, because intervening between the life estates of the sons and the ultimate estate is the estate of the trustee to protect the contingent interests of such of the sons as may survive the others, and the absence of any intervening estate is part of the very definition of merger.

It is further contended that the charitable gifts having failed under the act of assembly, the intervening interests are also invalid, under the principle of Johnston's Appeal, 185 Pa. 179. In that case it was held that where the paramount purpose of the testator was to dispose of his estate in a way which was illegal in its inception, because in contravention of the rule against perpetuities, intervening estates created in furtherance of that purpose were also void, though otherwise, and standing by themselves, they were not obnoxious to the rule.

The mere statement of the case is sufficient to show its want of applicability. Here the paramount purpose of the testator was not to effect an illegal scheme, but to provide for and protect his children—the limitation to charities being in no way dependent upon or sought to be accomplished through the agency of the prior gifts. There was no " scheme " whatever. The creation of the charities was perfectly lawful when the will was executed. It only failed because of the death of the testator within the time required by statute, and it is only to the extent of the charitable dispositions that the act affects the provisions of the will.

*Errors assigned* were in dismissing exceptions to adjudication.

*Henry Budd*, with him *Charles F. Zeigler*, for appellant, Albert H. Moore.

*William S. Divine*, with him *Samuel B. Huey*, for appellant, George M. Moore.

*Richard C. Dale*, with him *O. Percy Bright*, *H. H. Pigott* and *Simpson & Brown*, for appellees.

PER CURIAM, April 1, 1901:

The arguments in support of these appeals have failed to convince us of any error in the adjudication complained of. We therefore dismiss the appeals and affirm the decree at the cost of the appellants.

Decree affirmed.