## McGlensey's Estate.

*Taxation—Inheritance tax—Decedents' estates—Wills—Vested and contingent estates—Acts of June 20, 1919, P. L. 521, and May 4, 1921, P. L. 341.*

1. Where a testatrix, who died in 1898, gave a life estate to her grandson with remainder to his issue without substitutionary limitation over, and the grandson died in 1922, unmarried and without ever having had issue, the heirs of testatrix take the principal of the share free from any inheritance tax.

2. In such case, the grandson was never "seized or possessed" of the property within the meaning of the act, which provides for an inheritance tax when the transfer is, by will or by the intestate laws, "from any person dying seized or possessed of the property."

Swann's Estate, 1 Dist. R. 579, and Starr's Estate, 25 Dist. R. 55, followed. Gelm's Estate, 61 Pa. Superior Ct. 228, and Moss's Estate, 80 Pa. Superior Ct. 323, distinguished.

BALDRIGE, Auditing Judge, and THOMPSON, J., dissent.

Exceptions to adjudication. O. C. Phila. Co., Oct. T., 1924, No. 3440.

*Joseph M. Dohan,* for exceptant; *J. Lee Patton,* contra.

GEST, J., April 20, 1926.—Mary L. McGlensey, who died in 1898, devised a part of her estate in trust for the benefit of her grandson, Charles E. McGlen-

McGlensey's Estate.

sey, for life, with remainder after his death to his issue, and as he died in 1922 without issue, an event not provided for by the testatrix, an intestacy resulted as of the date of her death, in consequence of which a share of the estate was awarded to the executors of Charles, who was the only child of his father, Charles W. McGlensey, who died in 1904, one of the five children of Mary, the testatrix, Mary L. McGlensey. At the audit of the account of the executors of Charles E. McGlensey, the Commonwealth claimed inheritance tax thereon, which the Auditing Judge awarded, under the authority of Gelm's Estate, 61 Pa. Superior Ct. 228, and Moss's Estate, 80 Pa. Superior Ct. 323.

The transfer inheritance tax is imposed by the act of assembly when the transfer is by will or by the intestate laws "from any person dying seised or possessed of the property," which phraseology originated in the first act relating to the subject, April 7, 1826, P. L. 227, and, although it has been repeated in all the subsequent legislation, its interpretation has not yet been required of the Supreme Court. It may, therefore, be profitable to review briefly the principal decisions of the lower courts. In James's Estate, 2 Del. Co. Reps. 164 (1877), in the Orphans' Court of Delaware County, there was a devise to Mary for life with remainder in fee to Townsend, who, however, died before the life-tenant, leaving three sisters as collateral heirs. On the death of the life-tenant, collateral inheritance tax was claimed on the estate passing to the sisters, but the court held, construing the act strictly, that the tax was not due, because Townsend was not seised or possessed of the land at the time of his death.

In Nixon's Estate, 53 Pitts. L. J. 117 (1905), however, tax was allowed, in similar circumstances, on a clearly vested remainder, by Hawkins, P. J., of Allegheny County, who said: "The possession of the life-tenant is in the meantime (during his life) the possession of the remainderman, and answers the letter of the first section of the act. Where the gift is contingent upon surviving the life-tenant, death, before the happening of that event, will, of course, defeat the tax; but where it is vested, death is immaterial, for the owner's title has a transmissible quality whether by sale, Coxe's Estate, 181 Pa. 369, by will or intestacy; and the land passes subject to the tax: Finnen's Estate, 196 Pa. 72."

In Swann's Estate, 1 Dist. R. 579, 30 W. N. C. 479 (1882), the facts were as follows: Esther Stewart (the aunt of the testatrix) gave her estate by will in trust as to one-half for her sister, Margaret Bell, for life, and after her death for the sole and separate use of her daughter, Maria E. Swann, for life; and in further trust at her death, for the children of the said Maria, and in default of children, for testatrix's sister, Maria Smith. But if at the death of Maria E. Swann without issue, said Maria Smith should also be dead, then to the right heirs of said Esther Stewart.

Margaret Bell died in 1854, leaving an only child, Maria E. Swann. The latter survived Mrs. Smith and died without issue in 1891. It was decided in Stewart's Estate, 147 Pa. 383, that, by the death of Maria Smith before Maria E. Swann and the death of Maria E. Swann without issue, the contingencies expressed in the will had happened, that the right heir of Esther Stewart was Margaret Bell, and that Maria E. Swann, as her sole child, succeeded to the rights of the mother in the property and could dispose of it by will. In the subsequent distribution of Maria Swann's estate, tax was claimed, and Judge Ashman, in his opinion, said: "Now that Mrs. Swann was never in actual fact seised and possessed of the property in controversy is beyond all doubt. Up to the moment of her death the estate was contingent, and her death without issue was required to resolve the contingency. Until that event took place it

could not certainly be known whether the right heir of Esther Stewart would take, nor, therefore, whether she herself, as heir of Mrs. Bell, would be entitled to take. It is true that she had an inchoate right to the property, as to an estate in expectancy, which she could dispose of by will: and it is true that the property did pass to the legatees under her will. But the act brushes aside all refinements as to the nature of her ownership by its declaration that the owner must have had actual seisin and have been in actual possession of the property which it proposes to tax. There is no room for speculation in these terms and no escape from their literalness. A person cannot be seised of an estate in his lifetime which is limited to take effect only after his death. Seisin, in this state, is defined to be the beneficial interest and right of ownership; the right to demand and recover the immediate possession: 2 Shars. Blackstone, 127-132 n. The cases by analogy point the same way. Thus, unless the particular estate has ended during the coverture, a husband cannot be tenant by the curtesy of his wife's estate in reversion or remainder: Hitner v. Ege, 23 Pa. 305. So, under the Act of 1869, limiting proceedings in escheat within twenty-one years after the death of the owner last seised or possessed, for defect of whose heirs the escheat was had, the party in remainder, who had died twenty-six years before, but whose interest had not vested in possession until the falling in of the life estate only two years before, was held not to have been seised or possessed within the meaning of the act: Com. v. Naile, 88 Pa. 429." The principle of this case was followed in Matthiessen's Estate, 17 Dist. R. 201, and in Gebhard's Estate, 20 Dist. R. 529.

In Gelm's Estate, 61 Pa. Superior Ct. 228 (1915), the testator devised his estate to his wife Caroline for life, and after her death to his four children, by name, one of whom, William, died pending the life estate. On the death of Caroline, William's share was held to be subject to inheritance tax by the Orphans' Court of Allegheny County, who cited and relied on Nixon's Estate, 53 Pitts. L. J. 117, supra. Judge Orlady in the Superior Court affirmed this ruling, and said: "The question was carefully considered by the Orphans' Court, and we agree with the conclusion it reached in holding that the estate in the case at bar was vested in the decedent in fee, subject to the mother's life estate. The share of William, coming from his father, passes through him to his brothers and sisters, and the collaterals could not take it in any other way."

In Starr's Estate, 25 Dist. R. 55 (1915), the facts were similar to those of Swann's Estate, and the then recent case of Gelm's Estate was cited in behalf of the Commonwealth's claim for tax. We there said: "The facts, however, are different. The opinion of the Superior Court proceeds upon the ground that the remainder was vested, as it undoubtedly was; but in this case the will of Mrs. Longstreth, the decedent's mother, devised the estate, after the life estate to her son, to her son's issue. Until the death of that son it could not be determined whether he would leave issue or not, and while, according to some definitions, the interest of the decedent might be termed vested subject to a divesting contingency, or simply contingent, see Buzby's Appeal, 61 Pa. 111, yet the criterion is whether the decedent, in the language of the act of assembly, died 'seised or possessed' of the estate. We can readily understood how the decedent in Gelm's Estate may be said to have been thus seised or possessed, for his interest was merely postponed until his mother's death, an event sure to occur; but, as we would construe the language of the act, the decedent in the present case before the court cannot be said to have died 'seised or possessed' of an estate that depends upon the future death of her brother without leaving issue. This whole question was

elaborately discussed by this court in Swann's Estate, 1 Dist. R. 579, and Matthiessen's Estate, 17 Dist. R. 201, and Gebhard's Estate, 20 Dist. R. 529, above mentioned, and need not be considered at length. Even if some expressions in the opinions in these cases may have gone further than their actual facts required, we think that the distinction above made is sound, for in none was the estate from which the tax was claimed a vested estate such as appears in Gelm's Estate.

Since then Moss's Estate, 1 D. & C. 401, 80 Pa. Superior Ct. 323, has been decided, and it is now urged that this case goes to the extent of holding the tax to be due in this case, which, in its essential features, cannot be distinguished from Swann's Estate and Starr's Estate. The facts in Moss's Estate were very peculiar. Rebecca Moss, who died in 1899, bequeathed a share of her estate in trust for her brother Florian for life, and on his death, which occurred in 1921, one-half for her brother William in fee, and one-half for her brother Frank for life with remainder to his issue, and in default of issue this one-half for her brother William in fee. William, who died in 1907, bequeathed his entire estate to his daughter Mary, who died in 1914, and bequeathed her residuary estate to Frank. Florian died in 1921, and the Auditing Judge held that as Frank had no issue and was impotent, the estate, including both the one-half vested in William in fee and the remainder in the other one-half after the death of Frank without issue, should be awarded to Frank absolutely, subject to the payment of collateral inheritance tax. This court held the tax was due on the ground that William Moss, whose interest passed by devise to Mary, and from her by devise to Frank Moss, had a vested interest in one-half of the estate and a vested interest in the other moiety, subject to be divested by the birth of issue to Frank. The liability to tax was thus based on the ground of the vesting of the estate. The Superior Court sustained the liability for tax, but held that it was not due and would not accrue until the death of Frank, and directed security to be entered therefor. The opinion of the Superior Court discussed at some length the precise nature of the remainder given by the will of Rebecca Moss on the death of Frank without issue, whether it was contingent, or vested subject to a divesting contingency, or otherwise, and finally said (page 331): "There is no doubt, under the authorities, that the estate in remainder bequeathed to William Moss is transmissible. Whether it is technically vested is another question. If it is a contingent remainder, collateral inheritance tax is not due on it, upon such transmission, until the contingency is resolved in favor of the ulterior remainder and the estate passes thereunder into the possession of the remainderman's representatives or legatees."

The distinction that exists between Moss's Estate and the present is this: In Moss's Estate there was a remainder given after the death of Frank without issue to a definite person, viz., William, by whose will, and by the will of his devisee, Mary, it was transmissible, and was transmitted, to Frank; and William had, therefore, what might be called constructive seisin and possession. In the case at bar, no remainder was given at all by the will of Mary McGlensey. She died intestate as to this remainder, which, at the death of Charles, in the event of his death without issue, passed to her heirs at law. It is the case of a reversion which could not be resolved or determined during Charles's lifetime. Charles, therefore, never had any right or title during his life, nor indeed did his father, Charles Warrington McGlensey, who died in 1904. It is difficult to see how Charles can be said to have died seised and possessed of the estate now claimed to be taxable; for, even on the theory of constructive seisin, Charles cannot be said to have been constructively seised

of that which did not arise until his death. Moss's Estate holds that the contingent remainder is taxable as part of the estate of the contingent remainderman, where the remainderman has been subsequently ascertained by the resolution of the contingency. The facts, however, are different in the present case, and it seems to us that it would be stretching the language of the act of assembly too far to apply it here. Without any of the complications that exist in Moss's Estate, this case reproduces the facts in Swann's Estate and in Starr's Estate, and we are of opinion that no tax is due.

The exceptions are sustained and the claim of the Commonwealth is disallowed.

Baldrige, P. J., of the 24th judicial district, specially presiding as Auditing Judge, and Thompson, J., dissent on the ground, stated in the adjudication, that the case is governed by Moss's Estate, 80 Pa. Superior Ct. 323.