## Ammon's Trust Estate

George B. Balmer, for petitioner.
Richard T. Williamson, contra.

MARX, P. J., December 16, 1944.—Mary C. Ammon asks the termination of a voluntary trust in which she was named the life beneficiary and of which she has become the remainderman by the assignment of Edward R. Ammon, the settlor and designated remainderman. The petition was resisted in the answer (as amended) of The Reading Trust Company, the named trustee.

The trust was established upon the declaration of Edward R. Ammon, dated July 27, 1925, and the delivery to The Reading Trust Company, named trustee, of specific securities constituting the corpus of the trust and the acceptance of the trustee. The trust required collection of income, deduction of proper charges, and payment of net income to Mary C. Ammon during the term of her natural life. The declaration further provided:

"Upon the death of the said Mary C. Ammon, I direct that the principal of the fund hereby transferred, shall be paid to me, if living, and if I should not be living at the time of her death, then to my executor or administrator, or directly to such persons as are designated as beneficiaries in my last will and testament. . . .

"Fourth: I direct that the income of the fund herein created shall not be assignable or transferable, or be liable to attachment or execution for any of her debts, liabilities or engagements of any kind whatsoever. . . .

"Sixth.—This trust shall continue during the lifetime of my wife, Mary C. Ammon, in accordance with

the terms and conditions herein set forth, and shall be irrevocable."

On April 19, 1944, Edward R. Ammon executed and delivered a written assignment of all his right, title, and interest in the trust and the assets thereof to Mary C. Ammon, life beneficiary. By writing dated August 29, 1944, the settlor, Edward R. Ammon, consented to the termination of the trust "by Mary C. Ammon the present sole beneficiary".

Respondent (1) denies the right of Edward R. Ammon, the remainderman, to assign and avers the consequent insufficiency of the assignment; (2) contends that since Edward R. Ammon did not reserve the right to alter or amend any of the provisions of the trust, should Edward R. Ammon predecease Mary C. Ammon, the remainder interest in the trust would pass to the executor or administrator of the said Edward R. Ammon or directly to persons designated as beneficiaries in his last will and testament, and the remainder interest would thereby become subject to the rights of Margaret C. Ammon, the surviving spouse, and to the rights of his three minor children, Alice A., David A., and Margaret Ammon; (3) avers that Edward R. Ammon is separated from and not living with his wife, Margaret C. Ammon, and their aforesaid three minor children; that there is an agreement and a court order for the support of his said wife and children; that said Edward R. Ammon has defaulted in payments under the terms of said agreement and order, wherefore, the interest in remainder, reserved to Edward R. Ammon, might become subject to the rights of said spouse and children; (4) avers that Mary C. Ammon is the divorced wife of Edward R. Ammon; that Margaret C. Ammon, wife of said Edward R. Ammon, has not consented to the termination of the trust, nor has any consent been given in behalf of the aforesaid three minor children, and that not all interests in the trust have been merged or centered in petitioner.

There is no disagreement on facts. The sole resistance to termination rests on the contention of the trustee as set forth in the foregoing four points.

Petitioner relies largely upon Bowers' Trust Estate, 356 Pa. 85. In that case Jennie May Bowers established the trust, reserving to herself net rents and income for life, appointing the net rents and income, after her death, to her son, Richard Douglass Bowers, until he attained the age of 25 years, whereupon he was to receive part of the principal, the trust continuing as to the remaining part of the principal until he attained the age of 30 years, whereupon the remaining principal was to be delivered and paid to him and the trust terminated.

The rents and income to the settlor were limited "for her sole and separate use . . . so that the same shall not be subject or liable to the debts, contracts or engagements of . . . her son, and so that the same shall not be taken in execution . . . or be subject to any conveyance, assignment or anticipation whatsoever . . ." Richard passed the age of 30 years and it was admitted the interests given him had vested. In 1941 Richard assigned his interest in the trust to his mother, so that thereafter, in the words of the Supreme Court "no one now has any interest in the trust except the settlor herself".

The settlor, thereafter, asked termination and distribution of the corpus of the trust to her.

The Supreme Court, reversing the court below, directed entry of a decree granting the prayer of petitioner.

Veering from the long-recognized rule followed in the cases cited from Moore's Estate, 198 Pa. 611, to Harrison's Estate, 322 Pa. 532, the Supreme Court adopted the rule proclaimed in the Restatement of the Law of Trusts, secs. 338 and 339. The former section reads:

"If the settlor and all of the beneficiaries of a trust consent and none of them is under an incapacity, they can compel the termination or modification of the trust, although the purposes of the trust have not been accomplished."

The distinction is recognized between a testamentary trust, where the settlor cannot and does not consent, and an inter vivos trust, where the settlor can and does consent to termination.

In Bowers' Trust Estate it was noted that the spendthrift provision affected only the estate of the settlor, that it was entirely ineffective against creditors, and that it consequently served no purpose and did not require a continuance of the trust.

In this case the spendthrift clause was placed by the settlor around the estate given the life tenant. Had the settlor died the provision could not have been defeated and would have required the continuance of the trust. The remainderman, however, lives, assigned his estate to the life beneficiary, and agreed to termination.

Comment (d) on section 338 reads:

"Although by the terms of the trust or by statute the interest of one or more of the beneficiaries is made inalienable by him, if all of the beneficiaries and the settlor, none of them being under an incapacity, consent to terminate the trust, the trust will be terminated, although the beneficiaries without the consent of the settlor could not compel the termination of the trust."

It remains, then, only to determine whether (a) under the declaration and the assignment all interests in the trust became merged in petitioner so that she, with the assent given by the settlor, may require termination of the trust.

The settlor granted a life estate and reserved the remainder. He said: "Upon the death of Mary C. Ammon, I direct that the principal of the fund hereby transferred shall be paid to me". Had he stopped there,

an undoubted vested absolute estate in remainder would have resulted. He added "if living, and if I should not be living at the time of her death, then to my executor or administrator, or directly to such persons as are designated as beneficiaries in my last will and testament". In substance this was an alternative disposition, contingent upon his prior death. It was, furthermore, a limitation to those whom he might name legatees or to the executor or administrator of his estate. He reserved an absolute estate with a power incidental to an absolute estate of appointing it by will or by application of intestate law. The added power was a general power and did not detract from the absolute estate first reserved. The reservation of the power would not be taken as evidence of an intent to reserve less than the absolute estate first taken: Kidd's Estate, 293 Pa. 21, 23. The reserved power being general, no one had an interest therein but he to whom it was reserved. He could appoint to anyone, or he might extinguish the power. Until exercised, no rights or interests, vested or contingent, were created, and, having assigned his interest, his right to appoint has ceased. His interest in the trust was personal estate, subject to the rights of recourse given creditors, but also subject to his disposition without restraint as against all but creditors: Lines v. Lines et al., 142 Pa. 149; Beirne v. Continental-Equitable Title & Trust Co., 307 Pa. 570; DeNoble v. DeNoble et al., 331 Pa. 273.

"The possible appointees under a general power of appointment . . . had no title or interest in the corpus of the trust, and hence their consent was not necessary to a termination of the trust before its purposes were fully accomplished": Botzum v. Havana National Bank (Ill.), 12 N. E. (2nd) 203.

The attempt here is to avoid, by collateral attack, the effect of the assignment and consent. If the wife and children of the settlor have effective rights against

the assigned estate, requiring the trust to continue and the assets to be held, those rights must be determined by direct proceedings, and termination and distribution can then be denied or enjoined.

The spendthrift clause applied only to the income given to Mary C. Ammon. It was imposed by the settlor and while it remained it was a purpose which required continuance of the trust, but it could be, and here was, lifted by the assent of the settlor.

The prayer of the petition is, accordingly granted. A decree of termination is entered. The trustee is directed to account forthwith.