## Walton Estate.

Argued April 23, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*David H. W. Dohan* and *Paul C. Wagner,* with them *Stanley B. Cooper,* and *Waters, Fleer, Cooper & Gallager,* and *Pepper, Hamilton & Scheetz,* for appellants.

*Ralph S. Snyder,* Deputy Attorney General, with him *Edward J. Ozorowski,* Special Assistant Attorney General, and *David Stahl,* Attorney General, for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, November 28, 1962:

Dorothea Walton, daughter of S. Davis Walton, died December 19, 1957, unmarried and without issue. She disposed of her entire estate absolutely by will dated August 14, 1956. The Orphans' Court held that the Commonwealth was entitled to a collateral inheritance tax on two-thirds of the principal of her father's residuary trust estate, because at the time of her death Dorothea had been seized and possessed of a vested remainder interest therein as a result of an intestacy. Dorothea Walton's executors appealed.

S. Davis Walton died on September 6, 1910, a resident of Philadelphia County. He left his residuary estate in trust to pay out of the net income, an annuity to his wife, Agnes W. Walton, if she remained his widow, with the balance of income to his daughter, Dorothea Walton, upon certain trusts not herein pertinent. He then provided: "If my wife, Agnes W. Walton, should not remain my widow, then upon her remarriage, the income of my estate shall be equally divided between my wife, . . . and my daughter, Dorothea Walton [who was then five years of age], for and during the term of their natural lives.

"Upon and after the death of my said wife,* it is my will that *the income*\*\* from my entire estate shall be given unto my daughter, Dorothea Walton, *for* . . . her . . . *life,* and upon her death, *the same to be divided equally* between her children who may be living at the time of her death, share and share alike, the issue of any deceased child taking their parent's share.

"Upon the marriage of my daughter, Dorothea Walton, I authorize my trustees to pay unto her from *the principal of my said estate,* the sum of Twenty-five Thousand Dollars ($25,000.00) at the time of her marriage.

"If my daughter, Dorothea Walton, should die before my wife without leaving issue her surviving, then the whole income of my estate shall be given unto my wife for . . . life . . ., and upon the death of my said wife, . . . I order and direct my trustees to pay over the *principal* of my said estate to my sister, Jennie D. Walton, absolutely.

"If my said daughter, Dorothea Walton, should die before my wife, leaving issue her surviving, then such

---

* Walton's widow married J. William Good and died July 28, 1925.

\*\* Italics throughout, ours.

issue shall receive the *same share of the income* as would have been received by her mother had she been living."

Walton gave his executors and impliedly his trustees a power of sale and powers of investment. He also created a spendthrift trust and a separate use trust for his wife and for Dorothea.

Upon the death of Walton's daughter Dorothea, the trustee of Walton's estate filed an account in the Orphans' Court of Philadelphia County. That Court in adjudicating the trustee's account said:*

"The trust has now terminted in whole by reason of the death of Dorothea W. Walton, last surviving life tenant, which occurred as aforesaid on December 19, 1957.

"No Pennsylvania Transfer Inheritance Tax has been paid on the estate, in that the testator died September 6, 1910, which was before the imposition of any tax on direct heirs or lineals, and in that testator *died intestate* as to the remainder of his estate and those so entitled under the intestate laws were his wife and daughter . . . .

". . . Accordingly, the balance, . . . is awarded: [under the intestate Act in effect in 1910, viz. the Intestate Act of April 8, 1833, P. L. 315, as amended by Act of April 1, 1909, P. L. 87] one-third thereof to Fidelity-Philadelphia Trust Company, surviving executor of the will of Agnes W. Good, deceased, and two-thirds thereof to Fidelity-Philadelphia Trust Company and Dorcas R. Shrader, Executors of the will of Dorothea W. Walton, deceased."

The Commonwealth appraised Dorothea's interest in the estate of her father at $419,133.75 and assessed a collateral inheritance tax thereon, under §1 of the Transfer Inheritance Tax Act of June 20, 1919.** This

---

* Opinion of Judge LEFEVER, November 25, 1958.

** P. L. 521, 72 PS §2301.

was the inheritance tax statute in effect when Walton's daughter died in 1957. The pertinent provisions of that section are as follows: "A tax shall be, and is hereby, imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom in trust or otherwise, to persons or corporations in the following cases:

"(a) When the transfer is by will or by the intestate laws of this Commonwealth from any person *dying seized or possessed* of *the property* while a resident of the Commonwealth, whether the property be situated within this Commonwealth or elsewhere.

. . .

"(d) When any person or corporation comes *into the possession or enjoyment* by a transfer . . ., of *an estate in expectancy* of any kind or character which is contingent or defeasibly transferred *by an instrument taking effect after the passage of this act, . . . .*"

We held in *Good Estate,* 407 Pa. 642, 182 A. 2d 721, that Walton's widow did not die seized or possessed of a vested one-third interest in Walton's estate; on the contrary Walton's widow had at her death merely *a contingent interest in a possible future intestacy* in Walton's estate.

Two questions are presented by this appeal—(1) What was Dorothea's interest in her Father's Estate, and (2) Was it subject to inheritance tax under the Act of 1919,* supra?

Judge TAXIS held that Dorothea possessed a vested remainder interest in two-thirds of her father's residuary estate and consequently her estate was subject to an inheritance tax (collateral) thereon. Appellants (Dorothea's executors) contend that no inheritance tax

---

* The law was changed in several important respects by the Inheritance and Estate Tax Act of June 15, 1961, P. L. 373, 72 P.S. §2485-101 et seq., which repealed the Act of 1919. See infra.

is due the Commonwealth because Dorothea *did not die seized or possessed* of any taxable interest.

To determine Dorothea's interest in her father's Estate we must carefully examine and analyze Walton's will.

" ' "No rule regarding wills is more settled than the great General Rule that the testator's intent, if it is not unlawful, must prevail" ' ": *Collins Estate,* 393 Pa. 519, 522, 143 A. 2d 45. We reiterate what by now is hornbook law: " 'The testator's intention is the pole star in the construction of every will and that intention must be ascertained from the language and scheme of his [entire] will [together with the surrounding facts and circumstances]; it is not what the Court thinks he might or would or should have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words. Kelsey Estate, 393 Pa. 513, 143 A. 2d 42; Britt Estate, 369 Pa. 450, 87 A. 2d 243; Sowers Estate, 383 Pa. 566, 119 A. 2d 60; Cannistra Estate, 384 Pa. 605, 121 A. 2d 157.' Saunders Estate, 393 Pa. 527, 529, 143 A. 2d 367. See to the same effect Althouse Estate, 404 Pa. 412, 172 A. 2d 146. . . .": *Woodward Estate,* 407 Pa. 638, 640, 182 A. 2d 732.

In *Dinkey Estate,* 403 Pa. 179, 168 A. 2d 337 (page 182), the Court said: "It is by now hornbook law . . . that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain: Hope Estate, 398 Pa., supra; McFadden Estate, 381 Pa. 464, 112 A. 2d 148; Britt Estate, 369 Pa. 450, 455, 87 A. 2d 243; Edmunds Estate, 374 Pa. 22, 97 A. 2d 75."

It is clear from Walton's Will (1) that he specifically gave (pertinently) all the income from his trust estate to his daughter Dorothea for her life; (2) that the gift of income to her was restricted as to time and

was subject to a spendthrift trust and a separate use trust; (3) that he never gave Dorothea any principal; (4) that he never explicitly gave Dorothea's surviving children or issue any principal; (5) that he knew how to give the principal of his estate when that was his intent; and (6) that if Dorothea *survived her mother* and died without leaving surviving children or issue, *an intestacy would unquestionably result.*

## Dorothea's possible children and issue who were living at her death took, at the most, a contingent interest in the income

Appellants, to support their contention that Dorothea did not die seized or possessed of any taxable interest, advance two ingenious arguments: (1) that *Dorothea's surviving children* (and issue of deceased children) *were given the principal* after Dorothea's death (a) *under the explicit language* of Walton's will, or (b) under the principle that a gift of income unlimited and unrestricted as to time, amount and conditions, with no gift over, is a bequest of the corpus of the fund from which said income is derived: *Lowitz Estate,* 360 Pa. 91, 61 A. 2d 342; *Carmany Estate,* 357 Pa. 296, 53 A. 2d 731; *Thompson Trust,* 348 Pa. 228, 35 A. 2d 261; *Gibbons's Estate,* 317 Pa. 465, 177 A. 50; *Yeager Estate,* 354 Pa. 463, 47 A. 2d 813.

Appellants contend that the word "same" in the bequest ". . . the income from my entire estate shall be given unto my daughter . . . for her life, and upon her death the same to be divided equally between her children who may be living at . . . her death . . ." refers to the *principal* from which she was receiving the income. We are convinced that this is incorrect. We are convinced from the language of this paragraph as well as from the language of the entire will that the testator said, meant and intended "the same" to mean "income"; and he clearly gave to Dorothea's surviving

children and issue, the *income* which Dorothea was receiving for her life. In view of Walton's clearly expressed intent, we therefore find no merit in this contention of appellants—even though it will result in an intestacy* and even though a testator is presumed to wish to dispose of his entire estate when he executes a will*: *Conlin Estate*, 388 Pa. 483, 493, 131 A. 2d 117; *Verner Estate*, 358 Pa. 280, 56 A. 2d 667; *Berger Estate*, 360 Pa. 366, 61 A. 2d 855.

" '. . . the presumption against an intestacy, even where there is no countervailing presumption, [such, for example, as the equally potent presumption that an heir is not to be disinherited except by plain words or necessary implication] cannot be used to ignore or distort or alter testator's language in order to avoid an intestacy. . . .' ": *Conlin Estate*, supra (page 493).

Appellants' alternative contention—which, we repeat, is based upon the principle or canon of construction that a gift of the income unlimited as to time, amount or conditions, and when there is no gift over, is a gift of the principal—likewise lacks merit because the principle is inapplicable. The principle is an artificial one which was derived from the days of feudal tenure: *Gibbons's Estate*, 317 Pa. 465, 177 A. 50; Coke on Littleton, 4, 6. There are three well recognized exceptions to the principle or rule, namely, (1) Where the gift is limited in time or amount or by one or more conditions; or (2) where the trustee has active duties to perform; or (3) where the testator indicates a contrary intent: *Thompson Trust*, 348 Pa., supra; *Gibbons's Estate*, 317 Pa., supra. The principle is inapplicable in the instant case because the testator's will shows a contrary intent.

---

* *Carmany Estate*, 357 Pa., supra, and cases cited therein. Moreover, an intestacy would undoubtedly have occurred, even under appellants' theories, if Dorothea survived her mother and died without surviving children or issue.

Appellants rely heavily upon *Carmany Estate,* 357 Pa., supra. That case supports the aforesaid legal proposition upon which they rely, but is distinguishable on its facts. In that will Carmany gave the income from his trust estate to "my daughter, her heirs and assigns". The Court held this gave her a fee and said (page 300) : "The gift to Mary O. Forney was not only accompanied *by words of inheritance* but also unlimited and unrestricted as regards time, amount and conditions."

### Dorothea's equitable life estate and remainder interest did not coalesce

Ordinarily, where a person has (1) (a) an unlimited life estate, or (b) a life estate under a dry trust, and also (2) the remainder interest, such interests merge or coalesce into a fee, and the legatee is entitled to the principal outright. Where, however, the life interest is equitable and the remainder interest is legal, there cannot be a merger or a coalescence of the two estates : *Dickson Estate,* 378 Pa. 48, 105 A. 2d 156.

In *Dickson Estate* the Court, quoting from *Moore's Estate,* 198 Pa. 611, 612, 48 A. 884, said (page 51) : " 'It is said, however, that the life estates given to the sons by the will were merged in the fee or absolute interests in the remainder or reversion which they took under the intestate laws by reason of the failure of the gift to charities, . . . thus entitling the sons to the estate discharged of the trust. But merger can only take place where the interests meeting in the same person are of the same character, either both legal or both equitable; obviously it cannot take place where the life estate is under a trust which the law recognizes as valid, and the ownership of the remainder is legal.

" 'It is a principle so familiar as scarcely to require reference to authority, that where two estates meet, merger will not be permitted if the purposes of the cre-

ation of one of them require that they should remain distinct. See Dougherty v. Jack, 5 Watts, 456, and Forbes v. Moffatt, 18 Vesey, 394. An equitable life estate will not coalesce with a legal remainder to the heirs of the first taker and thus cause a trust to protect from creditors to fail (Rife v. Geyer, 9 P. F. Smith, 395), . . . .' See also Moser's Estate, 270 Pa. 217, 113 A. 199; Rehr v. Fidelity-Philadelphia Trust Co., 310 Pa. 301, 165 A. 380.''

It is clear therefore that *Dorothea was never entitled to a termination of the trust and to the trust principal outright,* even if the gift to her surviving children and issue violated the rule against perpetuities or even if she had a restricted equitable life estate and a vested legal interest in remainder.

To summarize: (1) Dorothea had an interest in all the income from her father's residuary trust estate *for her life* under an active spendthrift trust; (2) Dorothea's father never gave her *or her surviving children or issue* in and by his will *any part or interest in the principal* of his residuary estate;* (3) Dorothea's father died intestate as to the remainder, i.e., the principal of his residuary trust estate; (4) the remainder interest (i.e., the principal of his residuary trust), descended by operation of the intestate laws, one-third to his wife's estate and two-thirds to the estate of his daughter Dorothea; and (5) Dorothea, after the death of her mother (who was Walton's widow), had (a) an equitable life estate (under an active spendthrift trust) and (b) by operation of the intestate laws, a *vested* interest in (2/3rds of) the remainder of her father's estate (which took effect in possession and enjoyment *after her own* death) and there was no coalescence of the two estates.

---

* Except that Dorothea was given $25,000 from principal upon marriage.

Did Dorothea die seized or possessed of the principal
which descended, by operation of the intestate
laws, from her Father's Estate to her
Estate after her death?

That brings us to the *final* and most important
question—Did Dorothea *die seized* or possessed of this
remainder interest within the provisions of the Act of
1919? It is obvious that Dorothea did not die *possessed* of this vested interest. We said in *Good Estate,*
407 Pa., supra (page 646) : "The words 'dying seized
or possessed' mean *dying seized of a vested interest,* even though the actual enjoyment and possession thereof be postponed or arise in the future. McGlensey's Estate, 7 Pa. D. & C. 519 (per Judge JOHN
MARSHALL GEST) ; Starr's Estate, 25 Dist. 55 (per Judge
GEST) ; Swann's Estate, 1 Dist. 579; Matthiessen's Estate, 17 Dist. 201; Gebhard's Estate, 20 Dist. 529. See
to the same effect, Milliken's Estate, 206 Pa. 149, 55
A. 853; Mayer's Estate, 330 Pa. 39, 198 A. 439; Gelm's
Estate, 61 Pa. Superior Ct. 228."

Does such a vested interest constitute an interest
of which Dorothea died *seized at her death,* within the
language and meaning of the Act of 1919, supra?

Appellants correctly contend that every tax statute
must be construed most strongly and strictly against
the Government and if there be a *reasonable* doubt as
to its construction or its application to a particular
case, that doubt must be resolved in favor of the taxpayer: *Good Estate,* 407 Pa., supra; *Commonwealth v.
Allied Building Credits, Inc.,* 385 Pa. 370, 375, 123 A. 2d
686; *Gould v. Gould,* 245 U. S. 151, 153; *United States
v. Merriam,* 263 U. S. 179, 188; *Commonwealth v.
P. R. T. Co.,* 287 Pa. 190, 196, 134 A. 455. Appellants
also contend that the Transfer Inheritance Tax Act of
June 20, 1919, supra, was repealed by the Inheritance
and Estate Tax Act of June 15, 1961, supra, and since

the new Act eliminated the words "died seized or possessed" a substantial change in the law was clearly made, and consequently the 1919 Act was never intended to cover and include this kind of a vested interest.

The Court said in *Commonwealth v. Moon,* 383 Pa. 18, 117 A. 2d 96 (page 27) : "It is a canon of statutory construction that where words of a later statute differ from those of a previous one on the same subject, they presumably are intended to have a different construction: Fidelity Trust Company v. Kirk et al., 344 Pa. 455, 25 A. 2d 825; Panik v. Didra, 370 Pa. 488, 88 A. 2d 730; McFarland Estate, 377 Pa. 290, 296, 105 A. 2d 92."

However, even when these contentions are considered in connection with the question here involved, we are of the opinion (1) that the cases relied upon by appellants are not here controlling, and (2) that Dorothea died seized of the principal which descended to her by operation of the intestate laws from her father's estate, and (3) that the transfer from Dorothea to her legatees of this corpus is taxable under the Transfer Inheritance Tax Act of 1919, supra.

Decree affirmed; each party to pay own costs.