**CSC ENTERPRISES, INC.
t/a Who's On Third,**

v.

**Pennsylvania STATE POLICE, BUREAU OF LIQUOR CONTROL ENFORCEMENT, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 6, 2001.

Decided Aug. 7, 2001.

Edward B. McHugh, Philadelphia, for appellant.

Edward A. Taraskus and William B. Morrin, Philadelphia, for appellee.

Before COLINS, J., McGINLEY, J., and RODGERS, Senior Judge.

McGINLEY, Judge.

The Pennsylvania State Police, Bureau of Liquor Control Enforcement (State Police) appeals the order of the Court of Common Pleas of Philadelphia County (trial court) that reversed the order of the Pennsylvania Liquor Control Board (Board) which fined CSC Enterprises, Inc. t/a Who's on Third (CSC) $1,400.00 and suspended its liquor license for two five day periods.[1]

CSC owns and operates a bar in the City of Philadelphia. On November 2, 1998, the State Police issued Citation No. 98–1943 to CSC for the following violations of the Liquor Code (Code)[2]:

1. On July 16, 1998, you, by your servants, agents or employes, used, or permitted to be used on the inside of your licensed premises, a loudspeaker or similar device whereby the sound of music or other entertainment, or the advertisement thereof, could be heard outside, in violation of Section 5.32(a) of the Liquor Control Board Regulations, 40 Pa.Code § 5.32(a).

2. On August 20, 27, September 3, 1998, and divers other occasions during the past year, you, by your servants, agents or employes, sold, furnished and/or gave or permitted such sale, furnishing or giving of alcohol beverages to

---

1. The Board also fined CSC $200.00 for violating Section 5.32(a) of the Board's regulations in that on July 16, 1998, CSC, by its servants, agents or employes, used, or permitted to be used on the inside of its licensed premises, a loudspeaker or similar device whereby the sound of music or other entertainment, or the advertisement thereof, could be heard outside.

2. Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §§ 1–101—8–803.

four (4) male and eight (8) female minors eighteen (18) to twenty (20) years of age, in violation of Section 493(1) of the Liquor Code, 47 P.S. § 4–493(1).

3. On August 20, 27, September 3, 1998, and divers other occasions during the past year, you, by your servants, agents or employes, permitted four (4) male and eight (8) female minors eighteen (18) to twenty (20) years of age to frequent your licensed premises, in violation of Section 493(14) of the Liquor Code, 47 P.S. § 4–493(14).

Citation No. 98–1943, November 2, 1998, at 1–2; Reproduced Record (R.R.) at 5a–6a.

On July 16, 1999, the State Police issued CSC Citation No. 99–1009 for again violating Section 493(1) of the Code, 47 P.S. § 4–493(1) for serving alcoholic beverages to five minors on April 17, 1999.

On November 23, 1999, an administrative law judge (ALJ) of the Board conducted a hearing regarding the two citations as well as a third citation which was ultimately dismissed and which is not before this Court. With respect to Citation No. 98–1943, Officer Karen Hearn (Officer Hearn) of the State Police testified that she investigated the premises of CSC in July and September of 1998. Officer Hearn also testified that on September 3, 1998, she entered CSC at approximately 9:45 p.m. with another officer and that about an hour later a detail from the State Police came in to check identification. As a result, twelve patrons of CSC were cited for underage drinking and ten of the twelve had false identification cards. Notes of Testimony, November 23, 1999, (N.T.) at 14; R.R. at 23a. Officer Hearn also testified that she checked for an age declaration card file but did not find one. N.T. at 15; R.R. at 24a. Jamie Nasuti (Nasuti), one of the patrons cited for underage

drinking, testified that she was carded when she entered CSC using a fake ID and that CSC did not require her to sign anything or provide any other identification. N.T. at 21; R.R. at 30a. Seven other individuals who used fake identification cards to enter CSC and drink alcohol also testified and provided essentially the same testimony as Nasuti. The State Police introduced into evidence the fake identification cards for the ALJ's examination.

Thomas Cunningham (Cunningham), a corporate officer of CSC, testified that CSC did everything within its power not to serve minors. Cunningham further stated that CSC accepted what it deemed to be valid driver's licenses and passports. N.T. at 102; R.R. at 111a. Sam Allen, who served as doortender on September 3, 1998, testified that everybody was carded and that he turned people away who had no "reputable" backup cards if the initial identification card aroused his suspicion. N.T. at 108; R.R. at 117a.

With respect to Citation No. 99–1009, Officer Frank Spera (Officer Spera) of the State Police testified that on April 17, 1999, he led an enforcement team into CSC as part of an underage drinking program detail. Officer Spera and his team found five patrons that were under the age of twenty-one. N.T. at 129; R.R. at 138a. Officer Spera seized the fake identification cards of the patrons and reviewed CSC's age declaration card file. N.T. at 131; R.R. at 140a. The State Police submitted the identification cards into evidence. The five individuals who had been cited for underage drinking related that they presented fake identification cards when they entered CSC. The cards were examined by the doortender, and they were permitted to enter. The ALJ examined the cards.[3]

3. Cunningham testified that he was working the door on April 17, 1999, and he checked everyone's card as they entered CSC. N.T. at 183; R.R. at 192a.

In a decision mailed February 28, 2000, the ALJ sustained the charges in the two citations. With respect to Citation No. 98–1943, the ALJ ordered that CSC pay a fine of $1,600.00 and suspended CSC's restaurant liquor license for five days from 7:00 a.m. on April 21, 2000, through 7:00 a.m. on April 26, 2000. With respect to Citation No. 99–1009, the ALJ fined CSC $1,400.00 and suspended CSC's restaurant liquor license for five days from 7:00 a.m. on April 26, 2000, through May 1, 2000. The ALJ reasoned that CSC did not meet its burden of establishing the affirmative defense of good faith:

> I readily conclude Licensee has failed to establish the affirmative defense of good faith for each minor/purchaser in both citations.
>
> The factors which direct me to this conclusion are: the poor quality of some of the identification cards; the very short length of time the doortender actually viewed each card; the doortender's failure to question the minors as to the accuracy of the information contained in the identification cards; the number of youthful appearing patrons entering as a group; the absolute number of minors found; the number of minors found in relationship to the total number of patrons. Findings of Fact Nos. 5 and 9 describe specific factors.
>
> Finally, both Licensee and a doortender testified as to their efforts to insure that minors do not gain entry to the premises. I am convinced Licensee's efforts are insincere. It is obvious Licensee is giving no more than 'lip service' to its responsibility to see to it that minors do not gain entry into the licensed premises.

ALJ's Adjudication, February 28, 2000, at 11; R.R. at 259a.

CSC appealed to the Board. In amended opinions dated April 21, 2000, the Board affirmed, although the Board reduced the fine for Citation No. 98–1943 to $200. CSC appealed to the trial court.

On September 21, 2000, the trial court conducted a de novo hearing. The State Police submitted the record before the ALJ. Cunningham testified that it was CSC's policy to not let underage patrons into the establishment, card everyone who enters who looks to be in their late twenties or younger, and accept a driver's license. Notes of Testimony, September 21, 2000, (N.T. 9/21/2000) at 10; R.R. at 347a.

By order dated November 6, 2000, the trial court granted CSC's appeal and reversed the order of the Board. The trial court determined:

> Here, CSC met the obligations imposed by this provision of the Code: the identification of every minor was checked. The ALJ held that this was insufficient, finding that *Skoritowski* [*v. Pennsylvania State Police, Bureau of Liquor Control Enforcement,* 742 A.2d 704 (Pa. Cmwlth.1999)] required more. As relevant to this case however, the Court in Skoritowski found that when a "495 defense" was proffered, the ALJ had to look at the identification as it existed at the time of the sale in order to find a lack of good faith. Where it was not available for review, testimony was sufficient to support a finding of good faith.... What the Court in Skoritowski did not do was to require the licensee to determine the quality of the identification, that is, to detect a forgery. There is no question that CSC had a duty to check the identification cards. However, that duty is not limitless but is defined by what a reasonable licensee would do. Here, in concluding that the review of the identification cards was insufficient, the ALJ and the Board were essentially imposing upon CSC not only a duty to conduct an investigation

but also an obligation to detect that those cards had been forged. The ALJ essentially said as much when he stated that where the initial identification was suspect, CSC should use a declaration of age card system and make a photostatic copy of each identification present-ed.... However, the statute does not require that such a system be main-tained. Moreover, maintaining such a system would not have prevented the individuals from gaining access to CSC's establishment as, having already gone to the extreme of producing forged docu-mentation, there is little doubt that these minors would have fraudulently filled out the declaration cards as well.

The ALJ erred in imposing burdens upon CSC that are not required by the Code. Specifically, in holding that the identification cards proffered were not of good quality, the ALJ is requiring CSC to play detective and make an inde-pendent and correct determination of the validity of the cards. Under Skori-towski, what is required is a good faith

effort to make the determination. Moreover, the ALJ found that the amount of time that CSC's doorman re-viewed the identification cards was in-sufficient. Thus, the ALJ is imposing his opinion as to what is a sufficient time measure on how long the card must be reviewed which also is not required by the Code. The ALJ also found that CSC's failure to question the minors about the contents of the identification cards was further evidence of its lack of good faith. However, the Code does not require any licensee to question its pa-trons and potential partners or conduct an inquiry in a specific manner. (Foot-note omitted).

Trial Court Opinion, March 2, 2001, at 4–6; R.R. at 335a–337a.

■■■ The State Police contend that CSC did not act in good faith when it attempted to determine the age of the minors to whom it served alcohol and that Section 495 of the Code, 47 P.S. § 4–495 [4], requires that a bar must obtain a proper form of identification and have one of the

---

4. Section 495 of the Code provides:

(a) The photo driver's license or identifica-tion card issued by the Department of Transportation or by any other state, an armed forces identification card, a valid passport or a travel visa issued by a foreign country that contains the holder's photo-graph shall, for the purpose of this act be accepted as an identification card.

(b) Such identification card shall be pre-sented by the holder thereof upon request of any State Liquor Store or any licensee, or the servant, agent or employe thereof, for the purpose of aiding such store, licen-see, or the servant, agent or employe to determine whether or not such person is twenty-one years of age and upwards, when such person desires alcoholic beverage at a State Liquor Store or licensed establish-ment.

(c) In addition to the presentation of such identification card, the agent of the State Liquor Store or the licensee, or his servant, agent or employe, may require the person

whose age may be in question to fill in and sign a form containing language approved by the board....

....

(e) Any such signed form in the possession of a licensee or an employe of a State Liquor Store may be offered as a defense in all civil and criminal prosecutions for serv-ing a minor, and no penalty shall be im-posed if the administrative law judge or the courts are satisfied that the licensee or State Liquor Store employe acted in good faith.

(f) A photograph or photocopy or other vi-sual or video presentation of the identifica-tion card set forth in subsection (a) in the possession of a licensee or an employe of a State Liquor Store may be offered as a defense in all civil and criminal prosecu-tions for serving a minor, and no penalty shall be imposed if the administrative law judge or the courts are satisfied that the licensee or State Liquor Store employe act-ed in good faith.

following: either a completed declaration of age card, or photograph or photocopy of the identification.[5]

In 1996, the General Assembly amended subsection (c) of Section 495 and changed the word "shall" to "may" in the language directing the licensee to have a person whose age is in question complete a declaration form.[6] The amendment also added subsection (f).

In *Skoritowski v. Pennsylvania State Police, Bureau of Liquor Control Enforcement*, 742 A.2d 704 (Pa.Cmwlth.1999), this Court addressed Section 495 after the amendment. In *Skoritowski*, a twenty-year old male purchased four cans of beer from a food mart owned by Alan R. Skoritowski (Skoritowski), the licensee. The twenty-year old presented proof of age to a clerk in the form of an altered armed forces identification card. The food mart had four security cameras operating at the time of the purchase. The cameras revealed the clerk asking for and examining the purchaser's identification but did not reveal the card. After the purchaser was involved in an automobile accident, the State Police charged Skoritowski with violating Section 493(1) of the Code, 47 P.S. § 4-493(1). The ALJ upheld the citation and fined Skoritowski $1,000.00. The ALJ determined that Skoritowski acted in good faith but failed to satisfy the requirements of an affirmative defense because it was impossible to view the altered identification card used by the purchaser in the video from the security cameras or in photographic copies of still frames. The Board affirmed. After a de novo hearing,

the Court of Common Pleas of Lackawanna County sustained Skoritowski's appeal on the basis that he satisfied the defense of good faith. On appeal to this Court the State Police argued that Skoritowski did not establish good faith. *Skoritowski*, 742 A.2d at 705–706.

This Court addressed whether under Section 495(f) of the Code, Skoritowski could not successfully maintain a good faith defense without the presentation of the identification card. This Court disagreed:

> Acting in good faith is a state of mind and can be determined from the testimony of witnesses without further autoptic evidence. Once, however, autoptic evidence is introduced in a trial, then the factfinder decides what weight shall be accorded to the same. We find that the legislature's use of the words 'may be offered' exhibits its intent to allow for a finding of good faith absent the presentation of autoptic evidence. Such is the situation in the instant case.

> In the course of its de novo review, the trial court received into evidence the record of the previous administrative proceedings in the instant case. After reviewing this record, the trial court found that Licensee [Skoritowski] installed four security cameras in his store in order to discourage purchases by minors and to monitor his employees and their conduct with respect to asking for identification.

> Additionally, the trial court found that when the minor presented himself at

---

**5.** Following a de novo review, the trial court could sustain, alter, change, modify or amend the Board's action whether or not it makes findings which are materially different from the findings of the Board. *Altshuler v. Pennsylvania Liquor Control Board*, 729 A.2d 1272 (Pa.Cmwlth.1999). Accordingly, our review is limited to a determination of whether the trial court committed an error of law, abuse of discretion, or made findings of fact unsupported by the record. *Altshuler.*

**6.** Also, prior to the 1996 amendment, the person whose age was in question was directed to fill out a card instead of a form.

Licensee's [Skoritowski] store to purchase beer, Licensee's [Skoritowski] employee asked for and was provided with identification showing proof of majority. Further, the trial court found that the store's security cameras showed Licensee's [Skoritowski] employee carefully reviewing what was later determined to be an altered armed forces identification card. Based upon these findings, the trial court concluded that the defense of good faith had been shown 'rather emphatically' and that no penalty should be imposed. We cannot say that the trial court erred as a matter of law in reaching this conclusion. (Footnotes omitted).

*Skoritowski,* 742 A.2d at 707.

■ The present controversy differs from *Skoritowski* in that the false identification cards were available for review by the ALJ and the trial court. As in *Skoritowski,* the trial court found that CSC acted in good faith because the doortender examined the cards of the patrons as they entered the establishment. The trial court determined that a good faith effort did not require that the doortender closely examine each card, question each patron with a "questionable card", and obtain a declaration of age. As this Court concluded in *Skoritowski,* we cannot say that the trial court erred as a matter of law in determining that CSC acted in good faith.

The State Police assert that the General Assembly changed the wording in Section 495(c) of the Code from "shall" to "may" and enacted Section 495(f) of the Code to authorize the licensee to choose the type of evidence to offer i.e., either the declaration of age card or a photograph or photocopy of the identification card in lieu of an identification card. We do not agree.

■ In *Skoritowski,* Skoritowski did not produce either a declaration of age card or a photograph or photocopy of the false identification. Even without this evidence, this Court affirmed the determination that Skoritowski acted in good faith. Further, the word, "shall" by definition is mandatory. *Oberneder v. Link Computer Corp.,* 548 Pa. 201, 696 A.2d 148 (1997). Under the Statutory Construction Act, when the words of a stature are free from ambiguity, its letter should not be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b).

■ The word "may" generally indicates that a provision is directory rather than mandatory. *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. JEK Enterprises, Inc.,* 153 Pa. Cmwlth. 411, 621 A.2d 1115 (1993). Where words of a later statute differ from those of a previous one on the same subject, they presumably are intended to have a different construction. *Walton Estate,* 409 Pa. 225, 186 A.2d 32 (1962).

Here, the change from "shall" to "may" indicates that the production of a declaration of age statement or card is no longer mandatory. This Court does not believe that the General Assembly, in enacting Section 495(f), intended that a licensee must produce either the declaration of age card or a copy of the license or identification card in question to establish the defense of good faith.

Accordingly, we affirm.

### ORDER

AND NOW, this 7th day of August, 2001, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is affirmed.