## Althouse Estate.

Argued April 21, 1961. Before Jones, C. J., Bell, Musmanno, Jones, Cohen, Bok and Eagen, JJ.

*George Scott Stewart, III,* with him *John Morgan Davis, Paul A. Davis, 4th,* and *Davis, Bellis & Kolsby,* and *Smillie, Bean, Davis & Tredinnick,* for appellant.

*M. Paul Smith,* with him *Walter Y. Howson, Richard L. Grossman,* and *Truscott, Kline, O'Neill & Howson,* and *Smith, Cahall & Aker,* for appellees.

OPINION BY MR. JUSTICE BELL, June 26, 1961:

The net assets of Althouse's Estate increased in value approximately $200,000 between the time when the maximum marital deduction was determined and the date of distribution of assets to the marital deduction trust. The principal question involved is whether the testator made a gift in a dollar amount in the nature of a pecuniary gift equal to his maximum marital deduction, in which case it would not share in the increased value of the assets of the estate during its administration, or whether he made a fractional share gift, in which case it would share in such increased value. This is a case of first impression in our Court. A subsidiary question concerns the proper disposition of the testator's non-residential real estate.

Alfred K. Althouse died on November 5, 1955, leaving a will dated May 16, 1955. He was survived by his widow, who has since remarried, by his son, Alfred K. Althouse, Jr., the appellant, and by two daughters. Letters Testamentary were granted to Fidelity-Philadelphia Trust Company and his widow. The executors were also named as trustees of the trusts created by the will.

The Fifth paragraph of testator's will reads, in part, as follows: "Fifth: *So much of my estate,** of whatever nature and wherever situate, together with other property included in my adjusted gross estate qualifying for the marital deduction which passes or has

---

* Italics throughout, ours.

passed from me to my wife, . . . *shall equal the maximum marital deduction* as provided in Section 2056 of the Internal Revenue Code, or such other corresponding provision as may be in effect at the time of my death, I give, devise and bequeath to my trustees hereinafter named, in a separate trust known as Trust A . . . . [Subparagraphs a and b of the Fifth paragraph, although not contained in the record as they should have been, provide that the income from Trust A is to be paid to testator's wife for life and she is given a general power to appoint the principal by will, and in default of such appointment the principal is to be added to and become a part of the trust for testator's children known as Trust B, which is set up in the Sixth paragraph of his will.]

"(c)  It is my intention that this Trust A shall qualify under the marital deduction provisions of Section 2056 of the Internal Revenue Code, or such corresponding provision as may be in effect at the time of my death, and any provisions in this Trust A which might prevent the attainment of that objective shall be reconciled or ignored."

Paragraph Sixth reads, in part, as follows: "Sixth: All the rest, residue and remainder of my estate not hereinbefore provided for, I give, devise and bequeath to my trustees hereinafter named, in a separate trust to be known as Trust B* . . . ."

The matter came before the lower Court on exceptions to the Executor's schedule of distribution which construed the fifth paragraph as *creating a fractional share gift* and distributed to the marital trust approximately 5/9 of the appreciation in assets of the estate and also an undivided 5/9 interest in testator's non-residential real estate.  Appellant, who is testator's

---

* This trust, we are informed, contains provisions for testator's children and issue.

son, contended that the entire appreciation of assets and all the non-residential real estate should be distributed to the residuary estate. From the decree of the lower Court which dismissed his exceptions and confirmed the schedule of distribution, Alfred K. Althouse, Jr. took this appeal.

Before analyzing the aforesaid paragraphs of the will, it is well to consider the test which must be applied. We said in *Cannistra Estate*, 384 Pa. 605, 121 A. 2d 157: "No rule regarding wills is more settled than the great General Rule that the testator's intent, if it is not unlawful, must prevail. . . . Moreover, 'The testator's intention must be ascertained from the language and scheme of his will [and the attendant circumstances] : "it is not what the Court thinks he might or would have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words": Britt Estate, 369 Pa. [450, 454, 87 A. 2d 243]': Sower's Estate, 383 Pa. 566, 119 A. 2d 60."

The first applicable section of the Internal Revenue Code is Section 2056* which became effective August 16, 1954. The maximum Estate Tax Marital Deduction is 50% of the adjusted gross estate. See Section 2056 (c). The relevant sections of the Internal Revenue Code provide:

"§2056. Bequests, etc. to surviving spouse.

(a) Allowance of Marital Deduction.**—For purposes of the tax imposed by section 2001, the value of

---

* Similar provisions were contained in Section 812(e) of the 1939 Internal Revenue Code.

** In *Rosenfeld Estate*, 376 Pa. 42, 101 A. 2d 684, the Court said (pages 42-43) :

"The marital deduction provision in the United States Revenue Act of 1948, Section 812(e) Internal Revenue Code, was passed to equalize the federal estate tax between residents of common law states and residents of community property states. . . .

the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the [adjusted] gross estate *an amount equal [in value]* to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate. . . .

(c) Limitation on aggregate of deductions.—

(1) General rule.—The aggregate amount of the deductions allowed under this section (computed without regard to this subsection) shall not exceed 50 percent of the value of the adjusted gross estate, as defined in paragraph (2).

(2) Computation of adjusted gross estate.—

(A) General rule.—Except as provided in subparagraph (B) of this paragraph, the adjusted gross estate shall, for purposes of subsection (c) (1), be computed by subtracting from the entire value of the gross estate the aggregate amount of the deductions allowed by sections 2053 and 2054.

"§2053. Expenses, indebtedness, and taxes.

(a) General rule.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

---

"The marital deduction statute endeavors to accomplish tax-wise in common law states what is provided by the civil law in the community property states. Accordingly, where the surviving spouse has absolute control (actual or potential) over the share received by him or her, the requirement of the marital deduction statute is met and no federal estate tax is assessed against that property."

See also: *In re Buckhantz' Estate*, Cal. App. 1953, 260 P. 2d 794; *Lincoln Bank & Trust Co. v. Huber*, Ky., 1951, 240 S.W. 2d 89; *Foerster v. Foerster*, Ohio Prob. 1954, 122 N.E. 2d 314; *Baylor v. National Bank of Commerce of Norfolk*, 1952, 72 S.E. 2d 282, 194 Va. 1.

(1)  for funeral expenses,

(2)  for administration expenses,

(3)  for claims against the estate, and

(4)  for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,

as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered. . . ."

It quickly became apparent that to provide by will for the maximum marital deduction was no easy matter. This was due in large part to the complexity of the language in the Internal Revenue Code. Under the provisions of the Code, the marital deduction was to be based (as above set forth) on the *adjusted gross estate* which was to be arrived at by subtracting certain specified allowable deductions from the gross estate. However, the gross estate for federal tax purposes is frequently different from the estate which passes under the testator's will, because the former includes life insurance and other property which is often not included in a testator's will.

It is usually impossible for a testator, at the time he prepares his will, to know what the exact amount of his estate or the exact amount of his marital deduction will be; and the tax can not be computed without knowing what the marital deduction will be. In most cases these are interrelated. A testator is, therefore, in a dilemma. If he gives a specific sum or specific assets to his widow (outright or in a marital trust) it may fall short of the allowable amount and thus fail to utilize the maximum marital deduction (underqualifying). He may avoid this dilemma by using a formula to provide a gift which *exactly* equals the marital deduction allowable, and at the same time carry out

his testamentary wishes and intent. Testator here elected to use a formula. Formula clauses are usually divided into (a) those creating a gift in a pecuniary amount and (b) those giving a fractional share of the residue. How to accurately express this formula and at the same time carry out the testator's dominant intent, viz., free his estate from as much of the Federal Estate Tax as is possible, has perplexed and baffled many.*

The problem is discussed by Professor A. James Casner in a well considered article "Estate Planning— Marital Deduction Provisions of Trusts", 64 Harv. L. Rev. 582 (1951). Casner gives examples of pertinent language for nonformula gifts and for formula gifts. The words suggested by Professor Casner for a pecuniary formula gift are "an amount equal to the maximum estate tax marital deduction . . . diminished by . . ."; while the formula he suggests for a fractional share gift is "that fractional share of my residuary estate which will equal the maximum estate tax marital deduction . . . diminished by . . ."

The testator in the present case did not use either of these phrases. He provided "So much of my estate, of whatever nature and wherever situate, together with other property included in my adjusted gross estate . . . [as] shall equal the maximum marital deduction . . . I give, devise and bequeath . . . to Trust A [the marital deduction trust]." We must decide which

---

* Few lawyers who specialize in the tax field can agree upon the exact language of the formula and even these lawyers are frequently revising the formula they had previously prescribed. Tax specialists and trust company officers could read with great profit an article in the Pennsylvania Bar Association Quarterly dated June, 1961, by Malcolm Muir, entitled "Marital Deduction Tax Traps". The article vividly illustrates and exposes the decisional conflicts and absurdities, as well as the injustice often resulting therefrom.

type of gift the testator meant by those words.

We have found no case in Pennsylvania where the subject is discussed; only six cases* in other jurisdictions have been cited to us, and our independent research has found only two others.** In none of these cases did the testator use the words "so much of my estate."

The nearest case on its facts is *Estate of Odgen A. Kantner, Deceased,* 50 N. J. Super. 582, 143 A. 2d 243.***

The pertinent language in that case was *"a portion of my estate* equal in value to (a) one-half of the value of my adjusted gross estate". The Court held that this was a *pecuniary* gift and that it should be satisfied by distributing to it enough shares of stock at their distribution time (higher) value as to make up the amount of the marital deduction reported in the Federal Estate Tax Return. There, as here, the marital trust was set up in one clause of the will, Article Third, and there, as here, the residuary estate was set up in a succeeding paragraph, Article Fourth. That Court considered such a pattern as an important factor in determining the testator's intention. It said: "As though to eliminate the slightest doubt that the marital deduc-

* *In re Estate of Ogden A. Kantner, Deceased,* 50 N. J. Super. 582, 143 A. 2d 243, 52 N. J. Super. 24, 144 A. 2d 553; *King v. Citizens & Southern National Bank of Atlanta, Ga.,* 103 So. 2d 689; *In re Reben's Will,* 115 N. Y. S. 2d 228; *In re Lewis's Will,* 115 N. Y. S. 2d 791; *Bush's Will,* 156 N. Y. S. 2d 897; *In re Estate of Florence E. Bing,* 200 N. Y. S. 2d 913.

** *Inman's Estate,* 196 N. Y. S. 2d 369; *McTarnahan's Estate,* 202 N. Y. S. 2d 618.

*** It would extend this opinion to too great a length, and would serve no useful purpose, to analyze the other cases cited. Under the particular language in each case, some were held to be pecuniary gifts, and some were held to be fractional share gifts. None of them are binding upon us, and their discussion does not relate to "so much".

tion gift was not intended to be of the residue formula type is the express direction in Article Fourth of the will that the trust there provided for should be constituted from the 'rest, residue and remainder of my property,' the conventional verbiage for reference to the residuary estate. It would be inexcusable disregard of the unequivocal cast of the document to construe the gift . . . (the marital deduction trust) as a disposition of the residuary estate or part of it."

We believe that the testator was clearly attempting and intending to take full advantage of the maximum marital deduction and to give all such (presently) tax-exempt property to his trust for his wife known as Trust A; and to give all the rest, residue and remainder of his estate to his residuary trust estate which he denominated Trust B. We are convinced that this was his dominant intent. The appellees have fallen into error in considering that Trust A was a gift of 5/9 or 1/2 or some fraction of testator's *entire* estate—Trust A is not a residuary gift either in a 5/9 fraction or in a 1/2 or other fraction. Had testator intended to give his entire estate 5/9 or 1/2 to his wife and the other 4/9 or 1/2 to his children and issue he could very easily have created a residuary trust estate and divided it into two trusts, the marital trust consisting of 5/9th known as Trust A, and the trust of the remainder for his children and issue known as Trust B; or even more clearly he could have specifically given a fractional share of his residuary estate to his marital trust and the other fraction to Trust B. He did not do so; instead he created a marital deduction trust in paragraph Fifth, and did not set up a trust for his residuary estate until after that had been accomplished. In other words, testator used the words—"so much of my estate which [with other property passing from me to my wife] shall equal the maximum marital deduction"—advisedly, and he thereby intended to convey his desire and in-

tent that this marital trust was to receive *exactly the amount of assets* equal to the maximum marital deduction allowed by law—no more and no less! When testator wrote his will he could not know, we repeat, the exact amount of his gross estate or his adjusted gross estate in dollars and cents, but he (and his attorney) did know that the exact dollar amount of the marital deduction would be ascertained and determined when his Federal Estate Tax Return was subsequently computed and determined. They knew that this return would show in dollars and cents the *exact amount* which was allowable as the marital deduction, and testator intended this exact amount to be paid to (his marital) Trust A, unaffected by any subsequent fluctuation of the market during the period of the executors' administration or by any possible but unforeseeable capital gains or losses.

The testator's intention will be even clearer if we consider what would have been the result had the securities declined during the executors' administration, rather than increased in value. If such a situation had occurred and the marital trust was tendered securities which had a lesser value at date of distribution, Trust A would not receive "so much" of testator's estate as would equal the maximum marital deduction allowed by the Internal Revenue Code. If "so much" cannot mean "less than", it cannot mean "more than".

We hold that the testator's gift to the marital deduction trust known as Trust A was a gift in the *dollar amount* which was shown on (and determined by) the Federal Estate Tax Return; that this was, in effect, a pecuniary gift of that exact dollar amount, and that this amount should be paid by the executors to the trustees of Trust A with cash and/or assets valued, in the case of securities, as of the date of distribution (or dates of distribution if there were partial distributions on account) to Trust A.

We now come to the question of the proper disposition of the testator's non-residential real estate. The Fourth clause of decedent's will provides as follows: "Fourth: I give and devise unto my said wife my residence in Colonial Village, Wayne, Pennsylvania, if occupied by me as my residence at the time of my death, or such other property as I may own and occupy as my residence at the time of my decease, absolutely and in fee. Any and all real estate owned by me at the time of my death, not occupied as my residence, shall become a part of my residuary estate."

It is the contention of the appellees, concurred in by the lower Court, that the last sentence of this clause was not, in itself, a devise of the non-residential real estate, but since he did not use the words "give and devise" it was merely a limitation of the specific devise of his residence property. They likewise seek to apply canons of construction which are irrelevant and inapplicable.

We disagree with this construction and with their other contentions in attempted support thereof. When testator executed his will and at his death he had a residential property. However, the next sentence read in connection with the gift to his wife of his residence, namely, "Any and all real estate owned by me at the time of my death, not occupied as my residence, shall become a part of my residuary estate",* is such a clear, plain and unambiguous expression of testator's intent that consideration of or reference to technical rules of construction is unnecessary. Where a testator's intention is clear, Courts should not resort to canons of construction in an attempt to unravel what needs no unraveling.

We therefore hold that it is clearly apparent that testator intended his non-residential real estate to be

---

* Which as we have seen was given, bequeathed and devised to Trust B for testator's children and issue.

a part of his residuary trust estate known as Trust B. It follows that the lower Court was in error in confirming the Schedule of Distribution which awarded an undivided 564,243/1,021,053 interest in the non-residential real estate to the marital deduction trust and such order must be reversed.

The Decree of the lower Court is reversed and the record is remanded to that Court with directions to order the executors to file an amended Schedule of Distribution in conformity with this opinion; costs to be equally divided between the principal of Trust A and the principal of Trust B.