## Graham Estate

*W. Edward Greenwood*, for accountant.

*William H. Mitman*, for surviving spouse.

*Joseph F. Harvey*, guardian ad litem.

MACELREE, P. J., April 1, 1964.—Decedent, a married woman, leaving to survive her spouse and issue, died August 26, 1962, leaving a will dated December

18, 1961, which was duly probated and upon which letters testamentary were granted September 4, 1962.

By the terms of her will, decedent provided, inter alia, as follows:

"III

"If my said husband survives me, I give, devise and bequeath the entire residue of my estate as follows:

"A. To my said husband absolutely, that fractional share of my residuary estate, undiminished by any estate, inheritance, succession or other death taxes, which when added to all property passing to my husband under the other provisions of this will or otherwise than hereunder, but which qualifies for the marital deduction will, obtain for my estate the maximum marital deduction permitted under the Internal Revenue Code applicable to my estate.

"B. The remaining fractional share of my residuary estate, after setting apart the share given to my husband under Paragraph A hereof, shall be held by my Trustees hereinafter named and shall be administered as follows:

"1. During the lifetime of my said husband:

"(a) All of the net income therefrom shall be paid to my said husband in quarterly or other convenient installments.

"(b) As much of the principal thereof as my Corporate Trustee in its discretion may deem proper or necessary for the comfort, welfare, maintenance and support of my husband shall be paid to or applied directly for him.

"2. Upon the death of my said husband, or upon my death if he does not survive me, the then remaining principal of Paragraph B shall be retained by my Trustees, and thereafter:

"(a) The net income therefrom shall be paid to my daughter MARJORIE G. REYHER in convenient installments, and as much of the principal as my Cor-

porate Trustee may from time to time deem proper for my daughter's comfort, welfare and support, shall be paid to my daughter or applied directly for her benefit.

"3. Upon the death of my daughter the then remaining principal shall be paid in equal shares to the children of my daughter who were living at the time of my death, and the share of any such children who may have died between the time of my death and the death of my daughter, shall be paid to the surviving children of my daughter who were living at my death.

"4. In the event that any of the children of my daughter entitled to a share in distribution has not reached the age of thirty (30) years at the time for such distribution, his or her share shall be retained by my Trustees and the income shall be paid to such child until he or she arrives at the age of thirty years, when the principal of such child's share shall be paid to him or her."

There has been submitted to this court the following question:

"Petitioner, Alan W. Graham, requests the Court to award the balance of principal to him under decedent's will on the basis that the deductions for Federal Estate tax purposes, plus the $60,000.00 exemption, exceeded the total gross estate for Federal tax purposes; and for the further reason that at the time of the execution of decedent's will, the value of the assets of her estate were greatly in excess of the value at the time of her death by reason of a decrease in valuation of stocks and bonds, and that the balance of principal in the estate is such that the purposes of the trust has failed.

"If the court so interprets decedent's will, the balance of principal should be distributed to Alan W. Graham. If the court does not so interpret the will, the balance of principal should be distributed to Alan W. Graham and The First Pennsylvania Banking and Trust Company, trustees named in decedent's will."

This court, on October 10, 1963, of its own motion, appointed Joseph F. Harvey, Esq., guardian ad litem to represent the interests of Bonnie Jean Reyher, a minor, aged 13½ years, Judith Lynn Reyher, a minor, aged 12 years, and Kimball Alan Reyher, a minor, aged 8½ years, remaindermen under decedent's will.

The said guardian filed a report under date of February 13, 1964, incorporated herein by reference thereto.

The question before this court has been submitted by all parties in interest on written briefs.

## Discussion

It is quite apparent to the court that the scrivener in preparing decedent's will was misled or misinformed as to the extent of decedent's estate.

As our present Chief Justice pointed out in Althouse Estate, 404 Pa. 412, 418:

"It is usually impossible for a testator, at the time he prepares his will, to know what the exact amount of his estate or the exact amount of his marital deduction will be; and the tax can not be computed without knowing what the marital deduction will be. In most cases these are interrelated. A testator is, therefore, in a dilemma. If he gives a specific sum or specific assets to his widow (outright or in a marital trust) it may fall short of the allowable amount and thus fail to utilize the maximum marital deduction (underqualifying). He may avoid this dilemma by using a formula to provide a gift which *exactly* equals the marital deduction allowable, and at the same time carry out his testamentary wishes and intent. Testator here elected to use a formula. Formula clauses are usually divided into (a) those creating a gift in a pecuniary amount and (b) those giving a fractional share of the residue. How to accurately express this formula and at the same time carry out the testator's dominant intent,

viz., free his estate from as much of the Federal Estate Tax as is possible, has perplexed and baffled many."

Mr. Justice Bell cites an article by Professor A. James Casner in a well-considered article " 'Estate Planning—Marital Deduction Provisions of Trusts,' " 64 Harvard Law Review 582 (1961), as indicating how some of the problems can be avoided.

The guardian ad litem cites at length from J. K. Lasser's Estate Tax Techniques, vol. 1, pp. 1011-13, as containing comments on the failure to provide what shall happen in such a situation as is here presented.

Counsel for Alan W. Graham, likewise, cites Lasser's Estate Tax Techniques.

Neither of these citations are helpful to the court inasmuch as the saving clauses suggested were not employed by the scrivener.

This court turns, therefore, to two basic principles of law, both of which are cited in Althouse Estate, as follows:

" 'No rule regarding wills is more settled than the great General Rule that the testator's intent, if it is not unlawful, must prevail . . . Moreover, "The testator's intention must be ascertained from the language and scheme of his will [and the attendant circumstances] : 'It is not what the Court thinks he might or would have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words:' " '

"Where a testator's intention is clear, courts should not resort to canons of construction in an attempt to unravel what needs no unraveling."

It is crystal clear that testatrix' husband was the primary object of her bounty. Her intention, in the opinion of this court, is equally clear.

Her will indicates a twofold purpose, first, to avoid payment of as much Federal estate tax as might law-

fully be avoided; second, that her surviving spouse should have a full half of decedent's estate outright and tax free and a life estate in the balance.

In the opinion of this court, to adopt either of the alternative distributions suggested, would be to thwart the clearly expressed intent of decedent.

While counsel in their respective briefs have referred extensively to the provisions of the Internal Revenue Code, we find no occasion to discuss those provisions in view of the conclusion that we have reached. . . .