## Meyers Estate.

Argued November 11, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Charles A. Shea, Jr.,* for appellants.

*Charles D. Lemmond, Jr.,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, January 5, 1965:

Elizabeth Hileman Meyers died testate February 24, 1963. She appointed Samuel Davis, Richard E. Hileman and Ray Goulstone as executors.

Item Twenty-two of the will pertinently provides: "I direct that Samuel Davis be given the first option to purchase my real estate in Kingston, Pennsylvania, *at a price to be determined as follows*:\* Richard E. Hileman and Ray Goulstone, two of my executors hereinafter named, shall appoint one qualified appraiser and Samuel Davis shall appoint one qualified appraiser and the two appraisers so selected shall jointly select a third qualified appraiser. The three appraisers as aforesaid, or a majority of them, *shall fix a fair and just value* upon my said real estate, and Samuel Davis shall have the option to purchase the said real estate *at the appraised value* within sixty (60) days thereafter. If Samuel Davis shall not so purchase my said real estate, I desire Richard E. Hileman to have like option to purchase the same *at the price established as aforesaid,* within sixty (60) days from the date of the expiration of the option of Samuel Davis."

---

\* Italics throughout, ours.

Davis appointed a qualified appraiser, Hileman and Goulstone appointed another qualified appraiser, and the two appraisers so selected jointly selected a third qualified appraiser, to fix a fair and just value of the property in accordance with the provisions of the will. There was no contention of fraud, accident or mistake, or that the appraisers were not qualified.

On May 23, 1963, Hileman as executor signed and filed an inventory of the property of the decedent in which, inter alia, the value of this Kingston real estate was fixed at $25,000, and taxes were paid by the executors on this valuation.

On July 16th, the three appraisers filed a written appraisal fixing the *fair and just value* of decedent's Kingston real estate at $24,000. The record does not disclose, nor do the executors contend, that they submitted to the appraisers any evidence of the value of the Kingston property.

On August 27th, Davis exercised his option and proffered $24,000 for the purchase of the property; this offer Hileman and Goulstone, the other two executors, refused to accept.

On September 13th, Hileman (who is not only one of the three executors but was likewise one of the three possible optionees, as well as one of the three residuary legatees, and also one of the two appellants) made an offer of $34,000 for this property.

On September 23rd, Alfred H. VanDran made an offer to the executors of $34,100 for the property.

On October 11th, Davis filed a petition in the Orphans' Court praying for a citation against Hileman and Goulstone (the other two executors) requiring them to show cause why, upon payment by Davis of $24,000, they should not join in the execution and delivery to him of a deed for this property. Hileman and Goulstone filed answers averring that the price of $24,000 offered by Davis was inadequate in view of the

receipt by the executors of the aforesaid subsequent offers. They further averred that Davis's exercise of his option under these circumstances would constitute (1) improper self-dealing by a fiduciary, and (2) a violation of his fiduciary duty as executor to the other residuary legatees to obtain the highest price available for an asset of the estate. After a replication and a hearing with evidence, the Orphans' Court granted the prayer of Davis's petition. From that Order Hileman and Goulstone appealed.

The general principles advanced by appellants, which prescribe the duties owed by a fiduciary, are sound but *inapplicable* in this case, and none of the arguments presented by appellants has any merit.

It is too often forgotten by attorneys that the Courts will uphold, carry out and require enforcement of every valid will and every provision thereof, in compliance with testator's intent as therein expressed, unless the will or a challenged provision thereof is unlawful or unconstitutional or against public policy.* The fact that a testator makes a gift or gives powers or rights or provides duties or obligations or conditions or limitations which a disappointed heir or even a Court believes were and/or are inequitable or unwise or unjust or foolish, is no justification for invalidating or changing or shackling testator's clearly expressed wishes and intent, or rewriting his will or any part or provision thereof.

Apparently it is necessary to repeat what by now should be hornbook law: ". . . '. . . "One possessed of testamentary capacity, who makes a will in Pennsylvania, may die with the justifiable conviction that the courts will see to it that his dispositions, legally made, are not departed from . . . or improperly defeated.

---

* See *Cannistra Estate*, infra.

. . ." ' " *Brown Estate,* 408 Pa. 214, 228-229, 183 A. 2d 307.

In *Henry Estate,* 413 Pa. 478, 198 A. 2d 585, the Court said (page 483) : ". . . 'A testator or settlor may " 'condition his bounty as suits himself, so long as he violates no law* in so doing. . . .' " ' "

In *Kelsey Estate,* 393 Pa. 513, 143 A. 2d 42, the Court said (page 519) : "Courts cannot, even when aided by hindsight and the ingenuity of counsel, rewrite a settlor's deed or a testator's will, or distort or torture his language or the language of a statute relating thereto, in order to attain what we believe is beneficial and wise, or even what we believe settlor would or should have provided if he had possessed a knowledge of all presently existing circumstances."

In *Houston Estate,* 414 Pa. 579, 201 A. 2d 592, the Court said (page 586-587) : ". . . In Walton Estate, 409 Pa. 225, 186 A. 2d 32, the Court once again pertinently said (page 231) : ' " ' ' "No rule regarding wills is more settled than the great General Rule that the testator's intent, if it is not unlawful, must prevail" ' " : Collins Estate, 393 Pa. 519, 522, 143 A. 2d 45. We reiterate what by now is hornbook law : " 'The testator's intention is the polestar in the construction of every will and that intention must be ascertained from the language and scheme of his [entire] will [together with the surrounding facts and circumstances] ; it is not what the Court thinks he might or would or should have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words. Kelsey Estate, 393 Pa. 513, 143 A. 2d 42; Britt Estate, 369 Pa. 450, 87 A. 2d 243; Sowers Estate, 383 Pa. 566, 119 A. 2d 60; Cannistra Estate, 384 Pa. 605, 121 A. 2d 157.' Saunders Estate,

---

* The exceptions to this principle are set forth in detail in *Cannistra Estate,* 384 Pa. 605, 607, 121 A. 2d 157.

393 Pa. 527, 529, 143 A. 2d 367. See to the same effect Althouse Estate, 404 Pa. 412, 172 A. 2d 146. . . .": Woodward Estate, 407 Pa. 638, 640, 182 A. 2d 732.' "

Testatrix did not provide that the executors or even the Orphans' Court should decide what was a fair and just value. She provided in the clearest language the mechanics and the persons (1) who were to determine the fair and just value of the property and (2) who was to have the option to buy the property, and at what price.* In the absence of fraud, accident or mistake, neither the executors nor the Court can disregard or void testatrix's clearly expressed intent.

Order affirmed, costs to be paid by appellants.

_____

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I join in the opinion of the Chief Justice. In my view, the issue raised in this appeal is whether the testatrix's intent, as expressed in her will, was such that the value fixed by the appraisers was to be conclusive. A reading of the will satisfies me that such was, in fact, her intent.

The method of selecting the appraisers was carefully set out in the will. The entire import of the testamentary direction indicates that, having given Davis and the other executors the opportunity to participate in the selection of the appraisers, testatrix would be content with the results produced. Testatrix recorded her confident belief that the panel of appraisers, so constituted, would fix a just and a fair value. She also announced her satisfaction with the value so determined and thereby rejected any attack on the valuation itself.

_____

* If a testatrix gave her executor an option to purchase her real estate for $20,000 when it was worth $50,000, neither the residuary legatees nor any Court could void or change the testatrix's intent as clearly disclosed in her testamentary gift.

In effect, she provided that her real estate, valued in accordance with her designated plan, for purposes of the purchase option granted to her fiduciary-legatee, was not subject to question. In the absence of fraud or other impropriety, her expressed desire must prevail.

Mr. Justice JONES and Mr. Justice EAGEN join in this concurring opinion.

DISSENTING OPINION BY MR. JUSTICE COHEN:

As I read Item Twenty-two of the will, the optionees can purchase the property at the price established by the appraiser only if that price represents, as directed by testatrix, "a fair and just value." Nowhere do I see an indication by testatrix that the value arrived at by the appraisers is, ipso facto, the "fair and just value." Accordingly, I see no reason why their valuation should be immune from attack merely because there was no fraud, accident or mistake. The function of the appraisers here is like their function in a situation where a testator directs them to value certain stock in his estate at "book value". Whether they have so done is always subject to litigation unless the testator expressly directs otherwise.

The lower court prevented respondents from controverting the valuation of the appraisers with testimony as to fair market value. I would reverse and remand with directions to have a hearing on the question of whether the appraisers' valuation was a "fair and just" one. "Market value" is, of course, most relevant to the inquiry.