364 A.2d 922

In re ESTATE of Joseph M. YARNALL (two cases).

Appeal of Eugene C. YARNALL and Olive
L. Paisley (two cases).

Supreme Court of Pennsylvania.

Argued Jan. 20, 1976.

Decided Oct. 20, 1976.

100

William H. Mitman, West Chester, for appellants.

L. Peter Temple, Glenmoore, John S. Halsted, for appellee, Estate of Joseph E. Yarnall, Deceased.

Ira G. Barrows, Deputy Atty. Gen., Philadelphia, for appellee, Comm. of Pa.

Raymond J. Peppelman, Jr., James J. McEldrew, Philadelphia, for appellee, E. Booth Yarnall.

Before JONES, C. J., and EAGEN, O'BRIEN, ROB-
ERTS, POMEROY and MANDERINO, JJ.

## OPINION OF THE COURT

JONES, Chief Justice.

Joseph M. Yarnall died testate October 17, 1973, sur-
vived by six children. By the terms of his will, dated
January 31, 1961, two of the children, Rachel Kimble
Yarnall and Jesse Hibbard Yarnall, were appointed exec-
utors of the decedent's estate which included a farm of
approximately eighty-one acres in Londonderry Town-
ship, Chester County, Pennsylvania. Under Item III of
the will, Edson Booth Yarnall, another child of the dece-
dent, was granted an option to purchase the farm prop-
erty:

". . . I hereby direct that my said son shall have
the opportunity of purchasing the same at the price set
for Pennsylvania Transfer Inheritance Tax purposes
within twenty (20) days after said appraisement is
made by the Inheritance Tax appraiser. My son shall
notify my Executors, in writing, within said period
whether or not he desires to purchase said real estate
at said price. If my son fails to give such notice or
does not desire to purchase said real estate my Execu-
tors are hereby authorized to sell and dispose of said
real estate at public or private sale, . . ."

All of the residue of the estate was left to his surviving
issue, per stirpes.

After the will was duly probated, the executors filed
an inventory and appraisement in which the farm was
valued at $81,000. On May 15, 1974, the inheritance tax
appraiser for Chester County filed an appraisement
which valued the farm at $125,000. One of the executors
objected to the latter appraisement and filed a protest
with the Department of Revenue pursuant to section

1001 of the Inheritance Tax Act, Act of June 15, 1961, P.L. 373, 72 P.S. § 2485–1001. A hearing was then held before the Inheritance Tax Protest Board which rejected the appraisal of the inheritance tax appraiser and determined that the value of the farm, for inheritance tax purposes, was $81,000. Within twenty days of this decision, Edson Booth Yarnall notified the executors of his desire to exercise his option to purchase the property.

From the decision of the Inheritance Tax Protest Board, appellants, Eugene C. Yarnall and Olive L. Paisley, issue of the decedent and residuary legatees and devisees under the terms of the will, appealed to the Orphans' Court of Chester County. They requested in their petition that the court set aside the findings of the Board and affirm the value established by the inheritance tax appraiser. The Honorable John M. Kurtz, Jr., by decree dated January 20, 1975, dismissed the petition and sustained the appraisal of the Inheritance Tax Protest Board. *See Yarnall Estate*, 25 Fid.Rep. 151 (C.P. Chester County, 1975). An appeal was then taken to this Court. (No. 294 of January Term, 1975).

Before this appeal could be argued and decided, appellants again petitioned the lower court, this time for a decree directing the executors of the estate to sell the farm property at public sale. On May 5, 1975, Judge Kurtz dismissed the petition and a second appeal (No. 454 of January Term, 1975), which was consolidated with No. 294 for final disposition, followed.

In No. 294, appellants do not contest the fairness or accuracy of the Protest Board appraisal. Nor do they argue that the appraisal of the inheritance tax appraiser constitutes a more just valuation of the property. Rather, they contend that the intent of the testator, as expressed in his will, was to avoid appeals and the consequent delay in liquidation of his estate by investing the inheritance tax appraiser with the sole power to set the

option price of the farm property. If appellants' interpretation of the will is correct, then the valuation of the realty by the Protest Board is irrelevant and should be rejected.

The issue of whether a testator intends that the value fixed by an appraiser is to be conclusive was raised in *Meyers Estate*, 416 Pa. 516, 206 A.2d 37 (1965). In that case, the Court construed the following testamentary provision:

> "I direct that Samuel Davis be given the first option to purchase my real estate in Kingston, Pennsylvania, *at a price to be determined as follows:* Richard E. Hileman and Ray Goulstone, two of my executors hereinafter named, shall appoint one qualified appraiser and Samuel Davis shall appoint one qualified appraiser and the two appraisers so selected shall jointly select a third qualified appraiser. The three appraisers as aforesaid, or a majority of them, *shall fix a fair and just value* upon my said real estate, and Samuel Davis shall have the option to purchase the said real estate *at the appraised value* within sixty (60) days thereafter . . . ." *Id.* at 517, 206 A.2d at 37–38. (Emphasis supplied).

Three appraisers were chosen as directed by the testatrix and they set the value of the Kingston real estate at $24,000. Thereafter, Davis properly exercised his option but his offer of $24,000 was refused by Hileman and Goulstone, the two executors, who claimed the price was inadequate. This Court held that, under the circumstances, it was not for "the executors or even the Orphans' Court [to] decide what was a fair and just value, . . . ." 416 Pa. at 521, 206 A.2d at 39, and ordered that the sale of the property proceed. As Mr. Justice Roberts observed in his concurring opinion:

> "The method of selecting the appraisers was carefully set out in the will. The entire import of the testamen-

tary direction indicates that, having given Davis and the other executors the opportunity to participate in the selection of the appraisers, testatrix would be content with the results produced. Testatrix recorded her confident belief that the panel of appraisers, so constituted, would fix a just and a fair value. She also announced her satisfaction with the value so determined and thereby rejected any attack on the valuation itself." *Id.* at 521, 206 A.2d at 40.

The rule of *Meyers Estate* was followed in *Breisch Estate*, 51 Pa.D. & C.2d 725 (C.P. Montgomery County, 1970). Under the will in question, an optionee was given the opportunity to buy certain properties "at appraiser's figures (by Sandford Alderfer, Auctioneer), . . ." Id. at 726. The lower court held that, in light of the specific language of the testator, the appraisal arrived at by the appraiser named in the will was unchallengeable in the absence of fraud or other impropriety.

    With these cases in mind, we turn to an examination of the decedent's will. Our duty in this undertaking is to ascertain, if possible, the intent of the testator from a consideration of *all* the language contained in the four corners of the will. *Hill Estate*, 432 Pa. 269, 247 A.2d 606 (1968). It is clear, from the will, that testator intended to favor his son, Edson Booth Yarnall, with an option to purchase the Londonderry farm, while the residue of the estate fell to his surviving issue, per stirpes. The option, itself, was stated in these terms:

> "I hereby direct that my said son shall have the opportunity of purchasing [the farm] at the price set for Pennsylvania Transfer Inheritance Tax purposes within twenty (20) days after said appraisement is made by the Inheritance Tax appraiser."

Having reviewed all the language of the will we cannot agree with appellants that testator desired to foreclose

attack on the valuation made by the inheritance tax appraiser.

The will clearly states that the option price is to be that set for Pennsylvania Transfer Inheritance Tax purposes, but it does not provide, in so many words, that that price is to be finally determined by the inheritance tax appraiser. Testator did not identify the appraiser by name in his will or otherwise demonstrate reliance on the appraisal of a particular individual, as was shown in *Breisch Estate, supra.* Indeed, at the time the will was executed testator could not have known who the "Inheritance Tax appraiser" would be at his death. Furthermore, the testator did not attempt to insure a just and fair valuation which would satisfy both the optionee and himself. *See Meyers Estate, supra.* Participation of the executors and the optionee in the selection of the appraiser was not provided for and confidence in the result to be reached by the inheritance tax appraiser was not expressed. The conclusion is inescapable that the testator left the decision as to the finality of the inheritance tax appraiser's valuation in the hands of the interested parties. The appeal taken to the Protest Board was not foreclosed by the will and the Board's reappraisal of the farm is properly the option price under the terms of the will.

Our decision in No. 294 dictates the result in No. 454. On this appeal, appellants contend that the optionee forfeited his option to purchase by failing to notify the executors of his desire to purchase the farm within twenty days after the appraisement was made by the inheritance tax appraiser. We have already decided, however, that the testator did not intend that the inheritance tax appraiser settle, conclusively, the value of the real estate for purposes of the Pennsylvania Transfer Inheritance Tax. He allowed for appeal and obviously intended that notice be given after the price was settled. Here, the Protest Board set the option price, the execu-

tors were notified within twenty days of the Board's decision, and, therefore, the option was not waived.

The decrees of the court below are affirmed. Costs to be paid by appellants.

NIX, J., did not participate in the consideration or decision of this case.

POMEROY, J., filed a concurring opinion.

ROBERTS, J., concurs in the result.

POMEROY, Justice (concurring).

I cannot share the certitude evinced by the majority as to the testator's intention regarding the ascertainment of the option price of the real estate here in question.

Item III of the will states that the Londonderry Township property could be purchased by the optionee "at the price set for Pennsylvania Transfer Inheritance Tax purposes within twenty (20) days after said appraisement is made by the Inheritance Tax appraiser." It is true that the testator was not intending by these words to rely on the appraisal by a particular named individual who then held the office of Inheritance Tax Appraiser, for no person's name is attached to that official title in the will, but that fact hardly leads to an "inescapable" conclusion, see opinion of the Court at 925, that the testator intended that any other person or persons, such as the Protest Board, could establish the option price. Nor can I agree that the 20 day post-appraisement period for exercising the option was "obviously intended" to include the period following the decision of the Protest Board. (Opinion of the Court, ante at 926). Certainly it can be argued with some degree of plausibility that the inheritance tax "appraiser", as referred to by the testator, is a person distinct from the Protest Board or any other tribunal which may review the appraisal valuation, and is known to be distinct by anyone with a minimal experience in such matters.

For my part, I cannot but conclude that Item III of the will is ambiguous, and could mean either the appraisal figure initially arrived at by the inheritance tax appraiser or the appraisal figure finally established for Pennsylvania inheritance tax purposes, whether that figure be that of the appraiser or a reviewing body such as the Protest Board or a court. Stated another way, the term "inheritance tax appraiser" could as well refer to the entire machinery or process for determining the tax as to a single official in the process. In the absence of any extrinsic evidence to the contrary, it seems to me more reasonable to conclude that, had he thought about it, the testator would have intended the tax appraisal as finally determined to be the figure which should govern. Such a final figure would be the one which would return a fair value to the estate if the option were exercised, and at the same time would be a figure which would neither bestow a windfall upon nor exact a penalty from the optionee, depending upon whether the initial appraisal figure was low or high.

In light of these considerations, I concur in the affirmance of the trial court's decree.