## Drummond Estate

*J. William Smith, Jr.*, for petitioner.
*John L. Lachall*, for respondent.

GAWTHROP, *J.*, March 29, 1979—We have before us the petition of Robert W. Drummond, son of the deceased, Lois B. Drummond, and a beneficiary under her will. He requests the removal of the executor of her estate, Carl M. Mazzocone, Esq., alleging a conflict of interest and neglect of his duty to administer the estate.

On November 10, 1972, decedent signed a will in which one of her daughters and her attorney, Morris H. Sheer, Esq., were appointed co-executors. Additionally, the will gave the co-executors a litany of particular powers, one of which was the power to compromise claims.

On July 22, 1977, decedent executed a codicil to the will, which made two changes: it substituted Mr. Mazzocone as executor, and it specifically provided that he was to prosecute a certain non-support claim versus decedent's former husband to full conclusion.[1]

---

1. ". . . To prosecute to full conclusion, including the full collection thereof, of any and all sums of money or other benefits presently or hereafter due me from my husband, Robert Watchorn Drummond, in any way arising out of our marital relationship, the defense of the divorce action in North Carolina, the support action in Montgomery County and in North Carolina or any other action between my said husband and myself. I hereby order and direct that my said executor shall have full power to institute any and all litigation which, in his sole discretion, he may deem necessary or required to bring about a full and complete accounting and collection of all sums which may be due to my estate or to me, personally."

Lois B. Drummond died on September 17, 1977. As of that time, her husband, Robert W. Drummond, owed her some $75,000 in support arrearages which had been or are being reduced to judgments in Pennsylvania, as well as North Carolina, where he presently resides. This amount represents non-payment of a support order in the amount of $2,000 per month over a period of 36 and one-half months; it is the estate's only asset. The estate allegedly owes the United States Government more than $10,000 in taxes, and has a further debt to the executor and other counsel for legal fees. The amount of that debt currently is unascertained, but is owed for services rendered in connection with the ongoing support proceedings and related matters not yet concluded. There are additional miscellaneous claims totaling $1,000 to $2,000. The balance of the estate, under the terms of the will, is to be divided equally between decedent's three children, one of whom is petitioner.

Robert W. Drummond, deceased's husband and father of her three children, by his attorney, J. Williston Smith, Jr., Esq., proposed settlement to Mr. Mazzocone, offering to pay four items: 1) the miscellaneous claims against the estate in amounts totaling between $1,000 and $2,000; 2) the claim of the Federal Revenue Service for an amount which he claims to be approximately $7,000; 3) the balance due for counsel fees, if he and the executor can agree to the amount due; and 4) an amount for the three children-beneficiaries. He claims that he and the children can readily agree on an amount. At least one of the children, that being petitioner herein, is also represented by J. Williston Smith, Esq.

It is Mr. Mazzocone's inaction with regard to the settlement offer which forms the basis for this petition. Specifically, petitioner alleges a conflict of interest between Mr. Mazzocone's position as executor of the estate and his interest in the increased counsel fees to be derived from his continued prosecution of the support action. An averment that he is wasting the estate's assets is based on this same alleged conflict. Additionally, the petition alleges his failure to file an inventory, a statement of debts and deductions, and an account. In response to the first claim, Mr. Mazzocone relies on the specific mandate given him in the codicil to the will. With respect to the latter claim, he asserts the absence of significant assets in the estate as justification for his inaction.

## ISSUES

Accordingly, we are presented with the following issues: first, whether Mr. Mazzocone has a conflict of interest, or, more specifically, does he have such a personal interest in the increased counsel fees potentially to be derived from uncompromising litigation of the support matters as to make impossible his objective administration of the estate. This necessarily raises two secondary issues: a) whether the heirs of the deceased may agree to settle her claims against her husband, and thus nullify an explicit provision of the codicil; and b) whether that codicil, commanding the executor to prosecute the support action or litigate to full conclusion, with an inference of vindictiveness, as opposed to financial concern which might be drawn therefrom, violates public policy, and should here be voided.

The final issue before us is whether the absence of significant assets excuses the failure of the executor to file an inventory.[2]

## DISCUSSION

### I. The Conflict of Interest Claim.

Preliminarily, we note that it is common practice for an executor who is an attorney to act as counsel for the estate as well. See, e.g., Rauch Estate, 44 D. & C. 2d 674, 18 Fiduc. Rep. 366 (1968); Himes Estate, 16 Chester 27 (1967). It is acceptable for one who acts in this dual posture to charge reasonable fees both for the performance of his duties as executor, and as counsel for the estate: Rauch Estate, supra; Himes Estate, supra. Therefore, as a general matter, the fact that that litigation involving the estate will increase Mr. Mazzocone's counsel fees presents no prima facie conflict. No facts beyond his refusal to accept Robert W. Drummond's settlement offer have been presented in support of the claim of a conflict.[3] Given the absence of sufficient assets to pay the estate's alleged debts, the inadequacy of the settlement offer to cover those same debts, and the discretion vested in the executor by the terms of the codicil, we neither find the refusal of the offer to be unreasonable, nor do we find that it raises an inference of impermissible conflict.

2. An inventory is, of course, the first item required to be filed in an estate under the Probate, Estates and Fiduciaries Code of June 30, 1972, P.L. 508, 20 Pa.C.S.A. §3301(a).

3. Parenthetically, we questioned from the bench, and reiterate our inquiry into the appropriateness of J. Williston Smith's representation of both the petitioner and of his father, Robert W. Drummond, the former being a beneficiary under

The deceased was apparently concerned that a settlement of this nature would be proposed, and appointed Mr. Mazzocone with the plain intent that he act as he is now acting. He has the sole discretion to determine what, if any, settlement the estate will accept. We have not a scintilla of evidence to suggest that the appreciable confidence and faith of decedent in Mr. Mazzocone was misplaced. The removal of a fiduciary appointed by a decedent is ". . . a drastic action, and proof of the need for this remedy must be clear . . . [e]specially . . . where, as here, the person named as trustee enjoyed the special confidence of the decedent as evidenced by the specific appointment of the person as trustee in the will." (Citations omitted.) Croessant Estate, 482 Pa. 188, 193, 393 A. 2d 443, 446 (1978). The relationship of special confidence which we find to have existed between Mr. Mazzocone and decedent developed through his representation of her over a number of years. The dispute with her husband concerning the support matters spanned years,[4]

---

the will, and the latter being the estate's major debtor. Mr. Smith's self-appointed role of caster of stones at other counsel would seem somewhat uncomfortable under the circumstances. See, for example, Jedwabny v. Philadelphia Transportation Co., 390 Pa. 231, 235, 135 A. 2d 252, 254 (1957), cert. denied, 355 U.S. 966, 78 S.Ct. 557, 2 L.Ed. 2d 541 (1958). See also: Gospel of John, Ch. 8, v. 7.

4. See Drummond v. Drummond, 402 Pa. 534, 167 A. 2d 287 (1961); Drummond v. Drummond, 414 Pa. 548, 200 A. 2d 887 (1964); Drummond v. Drummond, 419 Pa. 202, 213 A. 2d 636 (1965); Drummond v. Drummond, 421 Pa. 451, 220 A. 2d 19 (1966), reversing Drummond v. Drummond, 86 Montg. 184 (1966). Mr. Mazzocone represented decedent in all of these appeals.

and clearly was an abiding purpose and concern of the decedent for much of the latter part of her life, during which time she came to have complete trust in her attorney. We do not find that removal is here warranted. We further note the holding in Crawford's Estate, 307 Pa. 102, 112, 160 Atl. 585, 588 (1931), that "[a]n attorney in drawing a will is under no obligation to anyone but his client; certainly not to legatees, and surely not to successful ones." That the will there, as here, was "provocative of litigation," was, therefore, not thought to create a conflict, nor to justify any reduction in the attorney's usual fee.[5] We conclude that the same result should obtain in this case.

His action being held appropriate under the terms of the will, we turn now to the question whether those terms themselves foreclose settlement by the heirs, and, if so, whether this accords with public policy.

---

5. There are limitations on the power of executors to refuse settlement of disputed claims: "[i]f a personal representative refuses to enter into a compromise and such refusal appears to be arbitrary, unreasonable and clearly contrary to the best interests of the estate, such circumstances in themselves may be sufficient ground for the fiduciary's removal . . ." Trumbauer Estate, 33 D. & C. 2d 335, 343-44 (1964), opinion of Satterthwaite, *P.J.*, citing Bailey Estate, 409 Pa. 222, 186 A. 2d 1 (1962), which affirmed per curiam the opinion of Judge Cox, reported at 186 A. 2d 2. As we have previously stated, we do not find Mr. Mazzocone's refusal of this settlement offer to have been unreasonable. This case is, therefore, distinguishable from Bailey Estate, supra, where the administratrix was found unable to exercise objective judgment because she had rejected a reasonable offer. She was held to have confused her personal interest with her duty to the other heirs, a finding we do not make as to Mr. Mazzocone. That both had a percentage interest in the estates is not the dispositive point; rather, we look to the ability to exercise objective judgment, which we are satisfied is present here.

## II.  Settlement by the Heirs

Our polestar is, of course, the testatrix' intent: Sowers Estate, 383 Pa. 566, 119 A. 2d 60 (1956); Mulert Estate, 360 Pa. 356, 61 A. 2d 841 (1948).

The provision in the codicil gives the executor the sole discretion regarding institution of suits in the divorce and support matters. The power to compromise claims is also vested in the executor by the terms of the will. Decedent's husband had failed to support her over an extended period and her last years were spent in relative poverty. Further, she recognized that her daughter, Lois Beverly Mowbray, who was the original co-executor, would have been thrust into a difficult position, having to continue to press the support prosecution against her own father. She fully trusted Mr. Mazzocone, who had been involved with the case for so long, to do that on her behalf. She feared that her children would not carry out her wishes, which were to vindicate her rights against her husband to the fullest extent possible. To that end, she removed from her children the power to settle her claims against him, while naming them beneficiaries. The testarix' intent, being clear, must be carried into effect unless it contravenes, or is inconsistent with, public policy or a rule of law: Meyers Estate, 416 Pa. 516, 206 A. 2d 37 (1965); Peden Estate, 409 Pa. 194, 185 A. 2d 794 (1962).

## III.  Effect of Public Policy on
## Executor's Discretion.

Decedent's intent was that her executor alone should decide what legal avenues to pursue in obtaining a full and complete accounting of all sums due her estate from her husband. That power must, however, be read in conjunction with the more

generic language in the earlier will empowering him to compromise claims, in view of the words of the codicil that the former power is "[i]n addition to the powers as set forth in my Will . . ." We are, thus, confronted, not with a claim belonging to the estate which cannot be settled, but one which can be settled only by the executor of the estate. This situation contravenes no established rule of law, but does pose a question with respect to the public policy favoring settlement.

"Settlements are favored in the law, particularly where the dispute is among family members." Mintz Trust, 444 Pa. 189, 196, 282 A. 2d 295, 299 (1971). This rule has usually been applied to uphold settlements previously reached between family members, which they later seek to repudiate. See, e.g., Brereton Estate, 388 Pa. 206, 130 A. 2d 453 (1957); Wistar's Appeal, 80 Pa. 484, 2 W.N.C. 613 (1876). We do not read that policy, however, to extend to this situation, and, in effect, to prohibit a provision such as the one at issue here. Although family agreements may be favored, they are subject to various restrictions, among them testamentary directions and limitations. See Martin Estate, 349 Pa. 255, 259, 36 A. 2d 786, 788 (1944): "Beneficiaries under a will cannot unfetter testamentary limitations by the simple expedient of a family agreement."

To the extent that the issues here are said to be only between a father and his children, we note that a valid family agreement to supersede the terms of a will would in any case require execution by all interested parties, and, further, that the estate have no creditors: Martin Estate, supra. We are not here presented with that situation, and do not now decide the questions that would be raised were the

case to appear in such a posture. We merely hold that the provision placing sole authority to compromise claims in the hands of the executor does not contravene the public policy favoring family settlements.

That decedent's intent may have been vindictive is not, in itself, sufficient to invalidate her testamentary directions. Were the suit patently frivolous and vexatious, we might be inclined to view the matter differently. Here, however, there was an outstanding support order and significant arrearages had accrued. That defenses to the suit may exist does not invalidate her cause of action; that she was not inclined to forgive her husband his failure to support her does not violate public policy.

Not only do we find no violation of public policy here, but we further find were we to declare invalid decedent's specific directive, we would make unfortunate policy. Mrs. Drummond had terminal cancer for the last several years of her life, during which time her husband was continuing his prolonged resistance of her support claims. To hold that her instructions to her executor are invalid would be an invitation to husbands in Mr. Drummond's position to withhold support to their dying wives, with the knowledge that the support claims could be posthumously settled for a pittance. Such a result would encourage disdain for our support laws in such situations. This we expressly reject.

## IV. Executor's Duty to File an Inventory

The executor is required, within three months after his appointment, to file an inventory, verified by affidavits of all real and personal estate of the decedent: Probate, Estates and Fiduciaries Code, 20 Pa.C.S.A. §3301(a). The predecessor section,

section 401 of the Fiduciaries Act of April 18, 1949, P.L. 512, 20 P.S. §320.401, had been read to impose a mandatory duty to file the inventory, even in the absence of any assets in the estate: In re Yabczynski Estate, 7 D. & C. 2d 597, 6 Fiduc. Rep. 577 (1956). The present section does not provide that lack of significant assets shall excuse the requirement, and we, therefore, conclude that the executor, who received letters testamentary on October 28, 1977, is required to file an inventory.

Accordingly, we enter the following

### DECREE

And now, March 29, 1979, the petition of Robert W. Drummond, Jr., for removal of executor, is hereby denied and dismissed, and the executor, Carl M. Mazzocone, is hereby ordered to file the inventory required by 20 Pa.C.S.A. §3301(a) within 30 days of the date of this decree.