IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| 3 Ram, Inc., | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 637 C.D. 2017 |
| | : | ARGUED: March 6, 2018 |
| Pennsylvania Liquor Control Board | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ELLEN CEISLER, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
JUDGE CEISLER                                      FILED:  March 28, 2018


3 Ram, Inc. (Licensee) appeals from the April 18, 2017 Order of the Court of Common Pleas of Philadelphia County (Trial Court), which affirmed a decision of the Pennsylvania Liquor Control Board (Board) denying Licensee's request to file its renewal and validation applications for liquor license R-13526 (License) *nunc pro tunc.*  We affirm.

## Background

Daniel Gallagher (Mr. Gallagher) is president and sole shareholder of Licensee.  Mr. Gallagher acquired the License in 1997 or 1998.  Notes of Testimony (N.T.), 4/28/16, at 20.  He immediately put the License into safekeeping with the Board.[1]  *Id.*  During this period, the Board mailed all correspondence related to the

---

[1] Section 474.1 of the Liquor Code provides a mechanism whereby a licensee whose establishment is not in operation may return the license to the Board for safekeeping.  Act of April 12, 1951, P.L. 90, added by the Act of December 9, 2002, P.L. 1653, *as amended*, 47 P.S. § 4-471.1.  At the time this litigation commenced, the initial safekeeping period was three years, after

License to Mr. Gallagher's residence. *Id.* Mr. Gallagher removed the License from safekeeping in 2008 when Licensee opened a restaurant located on East Moyamensing Avenue in Philadelphia, Pennsylvania. *Id.* at 22, 24. Thereafter, the Board mailed all correspondence related to the License to the restaurant's business address, which was the same address as the restaurant. *Id.*

Licensee was required to file a renewal application for the License for the period beginning November 1, 2010. N.T., 4/28/16, Ex. B-1. No renewal application was filed and the License expired on October 31, 2010. *Id.*, Ex. B-3. The restaurant closed several months later, in 2011. N.T., 4/28/16, at 24. Mr. Gallagher did not provide the Board with an alternate address to use for License-related correspondence, nor did he place the License in safekeeping with the Board. *Id.* at 23, 41-43.

In a letter dated May 1, 2011, the Board notified Licensee it had not filed a renewal application for the period beginning November 1, 2010. N.T., 4/28/16, Ex. B-1. The Board's letter noted that Section 470 of the Liquor Code[2] provided for the filing of a license renewal packet after expiration of the license. *Id.* To receive consideration by the Board, Licensee was required to submit the renewal application and license and filing fees by October 31, 2012. *Id.* The Board mailed this letter to the restaurant's business address. The Board mailed a second letter to the restaurant's business address on May 1, 2012. *Id.* The substance of the second letter was identical to the first.

---

which a licensee could request one-year extensions to the safekeeping period. Act 39 of 2016 reduced the initial safekeeping period from three years to two years. *See* Act of June 8, 2016, P.L. 273, § 20.

[2] 47 P.S. § 4-470.

2

On June 20, 2014, counsel for Licensee, Edward Taraskus, mailed validation applications[3] to the Board for the license periods expiring October 31, 2012 and October 31, 2014.  N.T., 4/28/16, Ex. B-2.  Included with the applications were money orders totaling $1,960.00 to cover the cost of filing fees.  *Id.*

Tisha Albert, Director of the Board's Bureau of Licensing, in a letter dated June 23, 2014, notified Mr. Taraskus that tax clearances from the Departments of Revenue (Revenue) and Labor and Industry (L&I) were required for the validation applications previously filed.  N.T., 4/28/16, Ex. B-3.[4]  The letter indicated that renewal applications, accompanied by the required fees and tax clearances, had not yet been received for the licensing periods expiring October 31, 2012 and October 31, 2014.  *Id.*  Ms. Albert mailed this letter to Mr. Taraskus's business address.

In a letter dated July 15, 2014, Ms. Albert informed Licensee its license expired on October 31, 2010 and it had no authority to operate.  *Id.*  Ms. Albert further informed Licensee that the pending validation applications were not approved and no authority would be given to operate until Licensee provided tax clearances from Revenue and L&I and the required renewal applications

---

[3] A restaurant liquor license is valid for up to two years.  Section 102 of the Liquor Code, 47 P.S. § 1-102.  The license must be validated midway through this two-year cycle.  For example, for a licensing period commencing on November 1, 2010 and expiring on October 31, 2012, a validation application was required for the period of November 1, 2011 through October 31, 2012. For the licensing period commencing on November 1, 2012 and expiring on October 31, 2014, a validation application was required for the period of November 1, 2013 through October 31, 2014.

The Liquor Code doesn't define "validation," but in essence the licensee must verify that taxes have been paid and nothing has changed since the renewal application was filed (no change in corporate structure, for example).

[4] When applicable, a validation application must be accompanied by tax clearances obtained from Revenue and L&I indicating all reports have been filed and taxes paid.  40 Pa. Code § 3.3.

accompanied by the requisite filing fees. *Id.* Ms. Albert mailed this letter to the restaurant's business address.

Jerry Waters, Director of the Board's Office of Regulatory Affairs, mailed a letter dated September 3, 2014 to Mr. Taraskus, notifying him that "[d]ue to non-receipt of required items," the validation applications were voided and application fees refunded. N.T., 4/28/16, Ex. B-4. Further, since the validation and renewal application process had to be concluded and filed by October 31, 2012, the License had passed out of existence. *Id.*

Licensee retained new counsel, Patrick McHugh, on November 20, 2015, Mr. McHugh sent the Board a letter requesting a hearing *nunc pro tunc* on the issue of Licensee's renewal application. N.T., 4/28/16, Ex. B-6. The Board scheduled a hearing on the issues of whether it could accept the renewal and validation applications *nunc pro tunc* and whether it could accept the applications and fees to extend the safekeeping period *nunc pro tunc.* Following a hearing on April 28, 2016, the hearing examiner issued proposed findings of fact and conclusions of law, in which he determined Licensee was not entitled to *nunc pro tunc* relief. On June 29, 2016, the Board entered an order denying Licensee's request for *nunc pro tunc* relief.

Licensee appealed to the Trial Court, arguing it should be allowed to file its renewal and validation applications *nunc pro tunc* because the Board mailed the applications to the incorrect address. Licensee further stated that the Board abused its discretion when it refused to enter into a conditional licensing agreement with Licensee. The Trial Court denied Licensee's appeal on April 18, 2017. This appeal followed.[5]

---

[5] Our review of a trial court's ruling on a licensing decision of the Board is limited to a determination of whether the trial court committed an error of law or abuse of discretion or made

**Issues**

Licensee presents the following issues on appeal:

1. Did the Board err when it failed to grant Licensee's validation application *nunc pro tunc*?

2. Did the Trial Court err when it failed to require the Board to grant Licensee a conditional licensing agreement that would permit Licensee to pay state taxes owed upon the sale of the License?

3. Was Licensee deprived of its due process rights by an unconstitutional commingling of the Board's executive and adjudicatory functions?

**Discussion**

**A. *Nunc Pro Tunc* Analysis**

Licensee first argues it should have been permitted to file its validation applications *nunc pro tunc*.[6] Licensee submits that, by inviting the submission of additional materials after receiving the validation applications, the Board waived any time limitations for the renewal of liquor licenses set forth in Section 470 of the Liquor Code.[7] The Board argues that Licensee has failed to establish an entitlement to *nunc pro tunc* relief.

---

findings of fact that were unsupported by the record. *Altshuler v. Pa. Liquor Control Bd.*, 729 A.2d 1272, 1275 (Pa. Cmwlth. 1999).

[6] Curiously, Licensee further argues that its appeal from the Board's September 3, 2014 letter and request for a hearing should be considered timely. However, a hearing was conducted on April 28, 2016, at which the hearing examiner took evidence relative to whether Licensee was entitled to *nunc pro tunc* relief. Therefore, this issue is moot.

[7] It is unclear from Licensee's brief how the waiver argument fits within the standard for granting *nunc pro tunc* relief. *Nunc pro tunc* relief may be granted where a filing is late due to

5

Section 470(a) of the Liquor Code requires an applicant for renewal of a liquor license to file tax clearances from Revenue and L&I indicating that any taxes owed by the applicant have been paid. 47 P.S. § 4-470(a).[8] A renewal application must contain a statement that all state taxes have either been filed and paid, are subject to a timely administrative or judicial appeal, or are subject to a duly-approved deferred payment plan. Section 477(a)(6) of the Liquor Code, 47 P.S. § 4-477(a)(6). The Board shall not approve a renewal application unless the applicant has paid any state taxes owed that are not otherwise subject to a timely administrative or judicial appeal or to a duly-authorized deferred payment plan. 47 P.S. § 4-477(d)(3).

Applications for renewal or validation of a liquor license must be filed at least sixty days prior to their expiration. 47 P.S. § 4-470(a); 40 Pa. Code § 3.3(a). A renewal application may be filed less than sixty days prior to expiration upon reasonable cause shown. 47 P.S. § 4-470(a). The Board may, in its discretion and after a hearing, accept a renewal application filed within two years of the expiration of the license. *Id.* Any period of time in which the license has lapsed because the licensee failed to timely file a license renewal or validation shall be considered time in which the license was held in safekeeping. 47 P.S. § 4-474.1(d). Any license remaining in safekeeping for more than three consecutive years[9] shall be

___

non-negligent circumstances, either as they relate to a party or his/her counsel, the filing was made within a short time after discovery of the untimeliness, the time period is of short duration, and the opposing party is not prejudiced by the delay. *Cook v. Unemployment Comp. Bd. of Review*, 671 A.2d 1130, 1131 (Pa. 1996). It may also be granted where a delay in filing is caused by extraordinary circumstances involving fraud or some administrative breakdown. *Id.*

[8] Act 39 of 2016 amended Section 470 to require tax clearances for applications for validation of liquor licenses. The requirement that validation applications include tax clearances was already contained within Section 3.3 of the Board's regulations. *See* 40 Pa. Code § 3.3.

[9] Because the License expired on October 31, 2010, the presumed safekeeping period in this case was three years.

6

immediately revoked by the Bureau of Licensing unless a transfer application or request for reissue from safekeeping has been filed prior to expiration of the safekeeping period. 47 P.S. § 4-474.1(b). Licenses not renewed within two years after expiration will cease to exist and will not be reactivated. 40 Pa. Code § 7.33(3)(v).

Here, the License expired on October 31, 2010. N.T., 4/28/16, Ex. B-4. Licensee was required to file its renewal application no later than October 31, 2012, and the safekeeping period expired October 31, 2013. By operation of law, the License was revoked on October 31, 2013 at the latest. Licensee filed its validation applications on June 20, 2014, more than seven months after that date, and did not file any renewal applications. Licensee cites no authority to support its argument that the statutory time limits in Section 470(a) were waived when Ms. Albert requested additional information following the submission of the validation applications.

Licensee has otherwise failed to develop its argument in favor of the requested relief. As previously stated, *nunc pro tunc* relief may be granted where a delay in filing is caused by extraordinary circumstances involving fraud or administrative breakdown, or where the filing is late due to non-negligent circumstances, the filing was made within a short time after discovery of the untimeliness, the time period is of short duration, and the opposing party is not prejudiced by the delay. *Cook*, 671 A.2d at 1131.

Regarding the untimely filing of Licensee's renewal and validation applications, Mr. Gallagher testified as follows: He could not recall whether he paid Mr. Taraskus the funds required for the renewal application filing fees for the license period beginning November 1, 2010, but the application was never filed because he

7

didn't have the money to pay the taxes and he "knew it was going to get rejected." N.T., 4/28/16, at 56-58. Mr. Gallagher contacted Mr. Taraskus approximately fifteen times from 2011 through 2014 to discuss the License. *Id.* at 50. Mr. Gallagher contacted the Board in November or December of 2014 to inquire about the status of the License. *Id.* at 51.

Mr. Gallagher further testified he never received the Board's May 1, 2011 or May 1, 2012 letters mailed to the restaurant address. N.T., 4/28/16, at 55. Mr. Gallagher previously owned a restaurant from 1986 to 2004, and correspondence relative to that restaurant's liquor license was always sent to the business address. *Id.* at 59-60. Mr. Gallagher never informed the Board when his residential address changed. *Id.* at 54.

When questioned about the possibility the License could be sold, Mr. Gallagher testified that other persons were interested in pursuing an agreement whereby they would pay the outstanding taxes in exchange for a sale of the liquor license. N.T., 4/28/16, at 69. Mr. Gallagher stated that Revenue agreed with the plan, but the Board "never said yes or no," and Mr. Gallagher did not have an agreement of sale. *Id.* at 70, 79.

Licensee has not cited a single fact of record to support its claim for *nunc pro tunc* relief. To the contrary, Mr. Gallagher testified that the license renewal applications were not submitted because the taxes had not been filed and he assumed the Board would reject the filings. N.T., 4/28/16, at 56-58. Licensee has not shown that its failure to file the renewal or validation applications within the prescribed timeframe was caused by non-negligent circumstances and has failed to assert even the slightest hint of fraud or an administrative breakdown which caused a delay in

8

filing.[10]  The bulk of Licensee's argument focuses on waiver.  Quite plainly, Licensee has failed to properly develop its argument in favor of *nunc pro tunc* relief.

Arguments not properly developed in a brief will be deemed waived.  *In re Condemnation of Land for S. E. Cent. Bus. Dist. Redev. Area No. 1*, 946 A.2d 1154, 1156 (Pa. Cmwlth. 2008).  Failure to cite authority in support of an issue will also result in waiver.  *In re Oren*, 159 A.3d 1023, 1027 (Pa. Cmwlth. 2017).  The record does not support a conclusion that Licensee is entitled to *nunc pro tunc* relief and, as Licensee has failed to properly develop the issue, it is waived.

### B. Conditional Licensing Agreement (CLA)[11]

Next, Licensee argues the Trial Court erred when it failed to compel the Board to grant Licensee a CLA that would permit it to sell the License and pay state taxes at the time of the sale.  Licensee asserts the Board's failure to enter into a CLA represents "a purely arbitrary execution of the agency's duties or functions." Licensee Br. at 24-25.  Licensee points to the lack of guidelines or policies for the issuance of CLAs and argues the Board exercised its discretion in a haphazard, arbitrary, and capricious manner.

The Board responds that nothing in the Liquor Code mandates the Board enter into a CLA.  Further, the Board asserts it could not have entered into a CLA with Licensee even if it wanted to because Licensee lacked the appropriate tax clearances.

Licensee's attorney, Mr. McHugh, proposed a CLA to the Board in his November 15, 2015 letter.  N.T., 4/28/16, Ex. B-6.  In that letter, Mr. McHugh

---

[10] Licensee has likewise failed to show the remaining elements required for *nunc pro tunc* relief set forth in *Cook*, specifically, that the filing was made within a short time after discovery of the untimeliness, the time period was of short duration, and the delay in filing would not be prejudicial to the Board.

[11] A CLA is an agreement between the Board and an applicant that places additional restrictions on the license in question.  47 P.S. § 4-470(a).  Such an agreement is binding on the applicant.  *Id.*

suggested Licensee had received one of the required tax clearances and he could "make an arrangement" with Revenue that would allow Licensee to sell the License and then pay to Revenue the taxes owed. *Id.* Licensee presented a tax clearance from L&I at the April 28, 2016 hearing. N.T., 4/28/16, Ex. L-3. Mr. Gallagher admitted the corporate taxes were still owed to Revenue. N.T., 4/28/16, at 45, 82. The Trial Court stated in its April 18, 2017 Order that the Board had no legal obligation to settle the matter and had no power to renew the License where Licensee lacked the necessary tax clearance. Trial Ct. Order, 4/18/17. In a letter dated August 17, 2016, the Board's counsel explicitly stated the Board was neither willing nor able to resolve the matter by means of a CLA. Reproduced Record at 197a.

The language of Section 470(a), which permits a CLA, is clearly discretionary. The Board "*may* enter into an agreement with the applicant concerning additional restrictions on the license in question."[12] 47 P.S. § 4-470(a) (emphasis added). A CLA is a voluntary agreement entered into by the Board and a licensee. *Bureau of Liquor Control Enf't. v. Big D. Rests., LLC*, 149 A.3d 890, 899 (Pa. Cmwlth. 2016). Conversely, the Board "*shall not approve*" an application for the renewal of a liquor license unless the applicant has paid any state taxes owed that are not subject to a timely administrative or judicial appeal or subject to a duly-authorized deferred payment plan. 47 P.S. § 4-477(d)(3) (emphasis added). The word "shall" is, by definition, mandatory. *CSC Enters., Inc. v. Pennsylvania State Police, Bureau of Liquor Control Enforcement*, 782 A.2d 57, 63 (Pa. Cmwlth. 2001). There is no dispute that Licensee lacked the appropriate tax clearance from Revenue.

---

[12] This language also appears in Sections 404(a), 431(b), and 432(d) of the Liquor Code. *See* 47 P.S. §§ 4-404(a), 4-431(b), 4-432(d).

As such, the Board had no authority to approve a renewal application. A CLA with Licensee in these circumstances would have conflicted directly with Section 477 of the Liquor Code. Beyond citing the standard of review for an abuse of discretion,[13] Licensee cites no authority to support its argument that the Board should have been compelled to enter into a CLA. Where a party fails to cite authority in support of a contention, that claim is deemed waived. *Oren*, 159 A.3d at 1027; *see also Jones v. Jones*, 878 A.2d 86, 91 (Pa. Super. 2005).

### C. Due Process Claims

Finally, Licensee argues it was deprived of its right to due process of law because the Liquor Code unconstitutionally commingled the Board's adjudicatory and executive functions. Licensee cites Section 470.3 of the Liquor Code[14] as the legal authority for this assertion. Section 470.3 of the Liquor Code permits the Board to auction licenses under certain circumstances. In its brief filed with this Court, Licensee asserts this issue was raised with the Trial Court during oral argument.

The Board argues Licensee waived this argument by failing to raise it on appeal to the Trial Court. Issues not raised in the lower court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302; s*ee also* Pa.R.A.P. 2117(c)(4) (statement of the case must specify where in the record a question was timely and properly raised below so as to preserve the question on appeal).

Section 470.3 was added to the Liquor Code by Act 39 of 2016 and, thus, could not have been the basis for the Board's determination in September 2014 that

---

[13] An abuse of discretion is defined as a misapplication of the law, a manifestly unreasonable exercise in judgment, or a final result that evidences partiality, prejudice, bias, or ill-will. *I.B.P.O.E. of W. Mt. Vernon Lodge 151 v. Pa. Liquor Control Bd.*, 969 A.2d 642, 648 (Pa. Cmwlth. 2009).

[14] Added by Act of June 8, 2016, P.L. 273, 47 P.S. § 4-470.3.

the License had passed out of existence. Section 470.3 did not exist on April 28, 2016, the date of the hearing. Further, the Board issued its decision denying *nunc pro tunc* relief on July 5, 2016, approximately one month before Act 39 went into effect on August 7, 2016.[15] As a consequence, there is no evidence of record addressing this statute or the constitutional implications thereof. Licensee's appeal to the Trial Court likewise raised no constitutional issues.[16]

In its statement of the case, Licensee cites the following exchange between the Board's counsel and the Trial Court, which took place during an April 13, 2017 oral argument, as evidence it raised and properly preserved this issue for appeal.

> Mr. McAteer [Board Counsel]: [C]ounsel brought up essentially an equitable argument, talking about what the new actions that come under Act 39 of 2016 for the various counties and indicating that we get that money. We do not get that money. That money goes directly into the general fund. So to the extent that any license is going to be auctioned, it goes straight to the Commonwealth, anyway. So to say that we're denying licenses just to hoard cash is factually and legally incorrect. So I would submit in this case, Your Honor…
>
> [Trial Court]: Although I'm guessing that's not in this record anywhere.
>
> Mr. McAteer: It isn't because in fact this record predates the Act. The Act became effective August 8th of 2016. And they passed it, really without anybody knowing much about it, in June of 2016. The hearing itself was in April

---

[15] The Board inadvertently identifies August 8, 2016 as the effective date for Act 39. However, Governor Wolf signed Act 39 on June 8, 2016, to be effective in sixty days. Sixty days from June 8, 2016 is August 7, 2016.

[16] Licensee filed its notice of appeal on July 5, 2016 and its brief on December 23, 2016.

of 2016. So I only address that because it was brought up *as an aside*.

R.R. at 201a-202a (emphasis added). In response to this dialogue, Licensee's counsel reiterated the argument that the Board should have entered into a CLA to permit the sale of the License.

Neither the "aside" referenced by the Board's counsel nor the transcript from the April 13, 2017 oral argument appear in the original record certified to this Court. An appellate court must limit its review to those matters testified to at trial and those exhibits that appear in the original record; we cannot consider those items that appear in the reproduced record, but not in the original record. *Brown v. Everett Case Mut. Ins. Co.*, 157 A.3d 958 (Pa. Super. 2017); *see also Kochan v. Department of Transportation, Bureau of Driver Licensing*, 768 A.2d 1186, 1189 (Pa. Cmwlth. 2001) (a document does not become part of the certified record by the mere expedient of including it in the reproduced record). Licensee cannot bootstrap a reference made by the Board's counsel to an aside made by Licensee's counsel, neither of which appear in the original record certified to this Court, to fulfill the requirements of Pa.R.A.P. 302(a). Therefore, Licensee has waived its due process claims.

## Conclusion

The Order of the Trial Court is affirmed.


_____
ELLEN CEISLER, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

3 Ram, Inc.,                   :
          Appellant      :
                        :
          v.             :  No. 637 C.D. 2017
                        :
Pennsylvania Liquor Control Board   :

## O R D E R

AND NOW, this 28th day of March, 2018, the Order of the Philadelphia County Court of Common Pleas, dated April 18, 2017, is hereby affirmed.

_____

ELLEN CEISLER, Judge